# REBUTTAL REPORT

## Jeff Rovin

CBS Broadcasting Inc.,
Plaintiff,
vs.
American Broadcasting Companies,
Inc., et. al.,
Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

CASE NO. CV 12-04073 GAF (JEMx)

*[signature]*

Jeff Rovin
June 12, 2012

1

I. INTRODUCTION

I have been asked to reply to the Defendants' Opposition to CBS Broadcasting's *Ex Parte* Application for a Temporary Restraining Order; the expert report of Lynn Spigel; and the Declaration of Kenneth Rosen.

In the short time that I've had to review these documents, I find that without exception the Defendants have made fundamental, extensive factual errors and committed analytical sleight-of-hand to craft documents that are misleading when they are not flat-out wrong.

In my original declaration, I described the combination of elements that makes *Big Brother* unique in the reality television world. To reiterate, the creators came up with a stage-bound house with twelve-to-fourteen occupants of varied age, gender, and ethnicity; isolated them from the outside world except through a host/narrator and the results of viewer voting as it impacted their lives; followed their activities with cameras and microphones around-the-clock; pit them against each other, individually and as teams in outlandish competitions; evicted (and occasionally allowed back) competitors; awarded a multi-million dollar cash prize to the last contestant standing; offered exclusive content and access on the web and via social media; and did all this in real-time, without the benefit of edits or post-production tweaking. In an on-line version of the game, a transparent house took the place of the traditional set as in *Glass House*.

That unique combination, that balance, that expression, had never appeared in the history of reality show television. Until *Glass House*, it did not appear anywhere but *Big Brother*.

The history of popular culture is filled with properties that drew on prior art to create something new. Jerry Siegel and Joe Shuster took costumes and settings from Flash Gordon, borrowed super abilities and concepts from Edgar Rice Burroughs' novels about John Carter,

2

mixed in the Biblical story of Moses, added a piece of Samson, plucked a dual identity from Zorro, took the epithet "Man of Bronze" from the magazine hero Doc Savage, and created the Man of Steel: Superman.

Superman was something new and inspired. Just as the Defendants' Spider-Man (referenced in my original declaration) was something new and inspired.

Just as *Big Brother* was something new and inspired.

Conversely, judging from the materials at-hand, *Glass House* is, at heart, a point-by-point copy.

### A. THE DEFENDANTS' OPPOSITION TO CBS BROADCASTING'S *EX PARTE* APPLICATION

II. OVERVIEW

The four general misrepresentations are:

1. In an effort to blunt the appropriation committed by their reality program *Glass House*, the Defendants have understated or avoided entirely the *unique combination* of elements that comprise the expression *Big Brother*.

2. The Defendants erroneously suggest that the Plaintiffs, who are in the business of producing television shows, cannot glean the essence and parameters of the television show *Glass House* from the materials at hand. To this end, the Defendants misrepresent the detail and scope of these materials. *Glass House* does not simply exist as two-page episode outlines or synopses of the *Glass House* rules ideas for a television show that are not the creative expression of those ideas in the television show. I myself have seen hundreds of pages of contestant profiles,

images of the set, contest designs, technical diagrams, flow charts, promotional materials, narrative plans, and the deposition of Executive Producer Kenneth Rosen among other documents. These lay out a clear, comprehensive, and concrete vision of *Glass House* -- as one would expect shortly before the series is to debut.

    3. Incredibly, later in the Opposition, the Defendants *themselves* lay out more that is publicly known about *Glass House* when they acknowledge that earlier this week, the contestants were announced by ABC and biographies of the contestants were posted on ABC's web site. They explain that this allows viewers to begin to get to know the contestants before voting begins (at http://www.abctheglasshouse.com/abc-the-glass-house-cast-full-bios-revealed/).

    4. The Defendants want the 'limited material' argument to apply to the Plaintiff's detailed, point-by-point analysis but not to their own overly broad and highly speculative conclusions. They claim to know, already, that the expression of ideas in *Glass House* and *Big Brother* will not be substantially similar because the two games have entirely different rules, necessitating different plots, sequences of events and character interactions. In an effort to tick-off an imagined extrinsic checklist, the Defendants speculate -- incorrectly -- about the narrative road *Glass House* must travel. Given the vast similarities *already in place*, as outlined in my original Declaration, the Defendants' show has in fact created a nearly identical blueprint. Without a dramatic deus ex machina device thus far unrevealed, *Glass House* cannot stray from the *Big Brother* template in a meaningful way.

III. FUNDAMENTAL FLAWS IN THE OPPOSITION

4

The Opposition declares that *Big Brother* is comprised of unprotectable *ideas* and adds that most are extremely commonplace unprotectable ideas in the landscape of reality television today.

Understandably, the Defendants seek to isolate reality show *ideas* from the fact that *Big Brother* was a new and singular combination of ideas, a new *expression*.

To begin with, *Big Brother* did not simply lift ideas whole, as the Defendants imply. The creators shaped and reimagined them, pared them and expanded them, refined and redefined them, to create a new kind of reality show. It was not a random recipe. It was an ingenious creative effort that resulted in a new balance, a unique expression. The Defendants' Marvel Comics division understood this when they sued Filmation Industries in 1980, a matter involving the Marvel Comics character Spider-Man and the allegedly infringing TV cartoon character Web Woman. There had been 'spider' heroes prior to Spider-Man (e.g. The Spider). There had been teenage heroes prior to Spider-Man (e.g. Superboy). There had been costumed characters with alter-egos prior to Spider-Man (e.g., Batman). But Spider-Man put these common 'ideas' together in a way that created a unique expression, one Marvel felt was worth defending through litigation.

Creatively, *Big Brother* is no less innovative an expression than Spider-Man was.

The Opposition goes on to state that *Real World*, *Hell's Kitchen*, *Paradise Hotel, Mad, Mad House*, and numerous other programs feature or have featured contestants living together in a house with cameras. The Opposition also says that while CBS repeatedly attempts to distinguish these shows by claiming only *Big Brother* shoots its episodes while other episodes are airing, that is in fact incorrect. ABC points to the fact that the reality program *Paradise*

5

*Island* employed this technique during its first season, as did *I'm A Celebrity, Get Me Out Of Here!*

So doing, the Defendants have supported *precisely* what I stated above, the claim the Plaintiff is making: the Opposition endeavors to dismiss *eight* similarities in the *Big Brother* expression by citing prior art that features just *two* of those elements (*Real World*, *Hell's Kitchen*, *Paradise Hotel, Mad, Mad House*) and then just *one* element (*Paradise Island* and *I'm A Celebrity, Get Me Out Of Here!*.)

Later, the Defendants state that as anyone who watches *American Idol* or *Dancing With The Stars* knows, viewers have been voting for the winners and losers of reality shows for years. Yet as anyone who watches those shows also realizes, those are talent competitions in which participants are not in a house, not in isolation, cover a vast age-range, are often celebrities, and have specific artistic abilities.

The Defendants could not find a *single* work that contained just those *four* elements.

The Opposition also supports the Plaintiff's position by failing to distinguish the many obvious, immediately discernible *differences* those programs represent from *Big Brother*:

1. *Real World*: As discussed in my original Declaration, this taped and edited show is about strangers who live in real houses, in different cities; who frequently leave that house; who deal with weighty issues ranging from prejudice to STDs; and who do not compete for a prize.

2. *Hell's Kitchen*: This is a cooking competition which post-dates *Big Brother* and features a celebrity chef, is set mostly in a kitchen, and benefits from post-production tweaks, among other differences.

6

   3. *Paradise Hotel*: The show, which post-dates *Big Brother*, is set in a luxurious resort hotel, described as "the most exotic, most exclusive resort in the world, where every desire is fulfilled and the only rule is   hook-up or go home." (at http://www.youtube.com/watch?v=-ZtraBVT2bE)  That is clearly not *Big Brother*.

   4. *Mad, Mad House*: Another program which post-dates *Big Brother*, this is about 'ordinary' people who are asked to share a house with and personally adapt to the 'alternative lifestyles' of a separate group of individuals living in the house (e.g., nudism, vampirism). Moreover, it is edited to remove unwanted sequences (http://www.youtube.com/watch?v=I8-UwBm8YJY). This is not *Big Brother*.

   5. *Paradise Island*: Another post-*Big Brother* series that is not a competition and clearly is *not Big Brother*: "This is a story of six party-goers chosen to live on an   island together..." (http://www.youtube.com/watch?v=oqPMowGQtwg)

   6. *I'm A Celebrity, Get Me Out Of Here!*: Yet another post-*Big Brother* series that has little in common with the Plaintiff's work: it's about celebrities who dwell in a jungle and, by surviving the environment itself and specific tasks, seek to be crowned potentate.

IV. OTHER ERRONEOUS CLAIMS

The Opposition is further undermined by generalizations and misstatements of fact.

1. The Defendants say the rule in *Big Brother* is permanent expulsion, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As far back as season three, expelled *Big Brother* house guests were permitted to return. (at http://www.youtube.com/watch?v=Snq73UnfXIk at 31:00).

7

2. The Defendants agree that CBS alleges Mr. Rosen misappropriated CBS's House Guest Manual. The Defendants go on to say that the House Guest Manual is a fifty page document that contains instructions for contestants and describes these instructions as covering common sense topics related to everyday life in the house and logistics related to being on the show.

This is disingenuous. Activities only appear to be common sense topics in *hindsight.* They are, in fact, undiscovered country when a writer is starting out. Until going on-site and observing a prototype in operation; until meeting with program executives and even reviewing similar materials, there is no way to anticipate everything that might be required.

3. The Opposition makes a generalization about television viewing habits that is a strained view of Determinism and is incorrect. The Defendants insist that if *Glass House* is just a knock off of *Big Brother*, viewers won't watch it. If it is truly an innovative reality show that incorporates America's feedback and creates a game unlike any other played on American television, then viewers will choose to watch *Glass House*.

Throughout television history, audiences have swarmed to a number of 'knock offs': the *Real McCoys* (1957-63) moved a hillbilly family to California , the same formula that worked for *The Beverly Hillbillies* (1962-71). *Wagon Train* (1957-65) blazed the trail for *Rawhide* (1959-66). The successful *77 Sunset Strip* (1958-64) was relocated and replicated as *Hawaiian Eye* (1959 -63). There are countless examples of programs that defined a genre with a new expression and were successfully cloned. Likewise, television history is littered with innovative failures, from *The Jetsons* (1962) which was a flop when it initially aired to ABC's own musical police series *Cop Rock* (1990).

8

## B. THE SPIGEL EXPERT REPORT

### V. OVERVIEW

After twenty-eight pages -- in which Spigel does not refute many of my claims (e.g., that *Glass House* is not "cinematic"), the Defendants expert reaches the conclusion that "



" and that

"

"

Not only are these are two ways of saying the same thing, they paraphrase *what I said in my original report*: that there is a long history to the reality show genre and that a number of elements from the prior art show up in *Big Brother*.

What Spigel has ignored is the same set of facts the Defendants avoided in their Opposition: the *combination of elements* found in *Big Brother* constitutes a *unique expression* that has been replicated in *Glass House*.

Nowhere, in either of these documents, is that refuted. It cannot be.

Spigel goes on to conclude, "



" then cites in support minutia such as *Glass House* using

"s" as opposed

to " " of *Big Brother*. In the same breath, Spigel

dismisses any resemblance between the big glass house in *Big Brother: Second Life* and big the glass house in *Glass House*.

9

To embrace a trivial distinction while brushing aside a striking similarity is representative of the Spigel methodology. The reason for this is understandable: it is only under a magnifying glass that differences can be found, and those are minor and inconsequential.

VI. EXTRINSIC TEST

Spigel repeats the flawed tactic cited above in an effort to dismantle an extrinsic test that was based, as stated, on necessarily incomplete and existing materials.

Briefly moving through Spigel's findings, we see over and over that the Defendants' expert must pull elements from a wide variety of reality shows to support her claim that the expression found in *Big Brother* is somehow not unique.

The court will note that nowhere in Spigel's extrinsic commentary does a *single* reality show contain most, let alone all, of the elements found in *Big Brother* and *Glass House*.



1. SETTING: Spigel writes, "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"

It is "████████████████" only if the intention of *Glass House* is to imitate *Big Brother*.

2. PACE: Spigel writes, "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"

In fact, Sergei Eisenstein invented the technique for *Battleship Potemkin* (1925). No one credits *Big Brother* with that innovation. But prior to *Big Brother*, "████████████" *did not*

10

*exist* in the context that I understand is at issue: its use as an integrated component in a unique expression -- that is, in a competition show set in a closed environment house.

3. SEQUENCE OF EVENTS: Spigel quotes my analysis then contributes, "  "

Once again, Spigel has had to go free-ranging to find yet another reality show that has one element that comprises the *Big Br*other expression.

4. DIALOGUE:  Spigel says that "                                                                " -- that is, colloquial improvisation. This statement ignores the fact that most reality shows are taped and then edited to shape conversations and are tweaked in post-production to add or subtract from whatever was said. That makes *Big Brother* (and *Glass House*) alike in yet another very specific way that goes against the bulk and trend of most reality programming.

5. MOOD: My description of paranoia in a self-evidently serio-comic house setting inspires Spigel to write, "  "

The willingness of the Defendants to drag Edgar Allan Poe and Stephen King into this mix underscores how far afield one must go to find the kind of expression represented by *Big Brother*.  Moreover, not a single one of the reality shows Spigel mentions shares more than one or two elements with *Big Brother* -- as I explained in my write-up of *Real World* in my initial report.

6. THEMES: I would not argue with Spigel that themes of betrayal and trust can be found in "                                                  " I would point out,

11

however, that neither Hamlet nor Coriolanus was competing for a multi-million dollar cash prize or had to be interviewed by network executives. Spigel says these themes are also "███████████████████████████████████████████████████████████████████████████ ███████" but -- once again -- finding 'an' element in 'a' show is not the same as duplicating the entirety of a show's combination of many elements.

    7. PLOT: Spigel's ability to extract an organic element for quarantine and twist it out of shape shine here. The Defendants' expert finds *Big Brother's* multi-million dollar cash prize, based on a competition within an innovative set-bound house, as being similar to other reality shows including dating shows like *The Bachelor*, *Joe Millionaire*, and *The Bachelorette*. That's not only untrue (on *Joe Millionaire*, the dates take place in exotic and super-luxurious places) it's inexplicably far afield.

    8. CHARACTERS: This is arguably Spigel's most myopic study. After remarking that a mix of ages, genders, and ethnicity can be found "██████████████████████████████████ ███████████████████████████████████████████████████" -- a statement that ignores the actual *number* of those characters in *Glass House*, which has been copied more or less exactly from *Big Brother* -- Spigel once again goes rooting through the details of the show to declare "█████████████████████████████████████████████████" It does indeed -- and over thirteen seasons *Big Brother* has varied that "████████████████" in order to lay out a conceptual scenario that apparently will work very well, with a few adjustments, for *Glass House*.

VII. SUMMARY

12

Spigel relies on collecting small differences in an effort to show that identical shows are not, in fact, the same.  When this tactic fails, the default position is to say -- as I stated extensively in my original report -- that a few separate elements found in *Big Brother* can be found in the prior art. That is a fact which Spigel turns into an accusation.

The reality is, it is the combination of elements -- the expression -- that I understand to be the issue. And there, Spigel fails to refute my finding that *Big Brother* and *Glass House* are strikingly similar.

### C.  THE DECLARATION OF KENNETH ROSEN

VIII. OVERVIEW

Mr. Rosen's declaration offers the same kind of obsessive detail that is found everywhere in the other reports I have read. It seeks to bury, via subtle and often irrelevant distinctions, the larger, irrefutable conclusion that, from the materials presently available, *Big Brother* and *Glass House* are essentially the same program.

IX. THE STRUCTURE OF *GLASS HOUSE*

In detail, Mr. Rosen breaks down the acts that will comprise the ABC show. In his words, these are:



13



With the exception of specific reference to the viewer-vote (not the idea for same, which has been done on *Big Brother*) there is not one item here that does not have a parallel, in this general order, in *Big Brother.*

Mr. Rosen draws on his experiences on *Hell's Kitchen, Mad Mad House, NASCAR Drivers: 360, Greatest American Dog,* and *Surreal Life* in support of some of his choices, but even a lay viewer would recognize that most of those shows have little in common *with Big Brother*. And again, where there *is* overlap, it is one element from one show, another element from another show. Not vast numbers of elements, virtually unchanged, from one show.

X. CONCLUSION

Hundreds of pages and tens of thousands of words from multiple sources cannot obscure what is at the heart of this dispute: when one brushes aside the ultra-fine points and accessories and minor tweaks, these two reality programs are, and remain, strikingly similar.