1 | SCOTT A. EDELMAN, SBN 116927
SEdelman@gibsondunn.com
2 | MICHAEL W. SEITZ, SBN 271136
MSeitz@gibsondunn.com
3 | GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
4 | Los Angeles, CA 90067-3026
Telephone: 310.552.8500
5 | Facsimile: 310.551.8741

6 | THEANE EVANGELIS KAPUR, SBN 243570
TKapur@gibsondunn.com
7 | BLAINE H. EVANSON, SBN 254338
BEvanson@gibsondunn.com
8 | GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
9 | Los Angeles, CA 90071-3197
Telephone: 213.229.7000
10 | Facsimile: 213.229.7520

12 | Attorneys for Plaintiff,

13 | CBS BROADCASTING INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| CBS Broadcasting Inc., | CASE NO. 2:12-CV-04073 GAF (JEMx) |
|---|---|
| Plaintiff, | Honorable John E. McDermott U.S. Magistrate Judge |
| v. | **DISCOVERY MATTER: PLAINTIFF CBS BROADCASTING INC.'S NOTICE OF MOTION AND JOINT STIPULATION REGARDING ADDITIONAL DISCOVERY SOUGHT BY CBS** |
| American Broadcasting Companies, et al. | |
| Defendant. | |

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Federal Rules of Civil Procedure 26, 34 and 37, and Local Rules 37-1 and 37-2, Plaintiff CBS Broadcasting Inc. ("CBS") hereby submits the attached Joint Stipulation to this Court seeking an order compelling Defendants American Broadcasting Companies, Inc. ("ABC"), The Walt Disney Company, Disney Enterprises, Inc., ABC, INC. (dba Disney/ABC Television Group), Keep Calm and Carry On Productions, Inc., Corie Henson, Michael O'Sullivan, Kenny Rosen, and others (collectively, "Defendants") to produce, within 48 hours of an order from this Court compelling production, all materials responsive to CBS's RFPs (from the attached Joint Stipulation).

Specifically, CBS asks the Court to compel Defendants to produce materials responsive to the below requests for production of documents:

Req. No. 1:  All DOCUMENTS from January 1, 2008 to present in the possession, custody, or control of Defendants American Broadcasting Companies, Inc., ABC, INC., Keep Calm and Carry On Productions, Inc., Corie Henson, Michael O'Sullivan, or Kenny Rosen, including but not limited to emails, text messages, instant messages, and communications on Facebook, Twitter, or other social media sites, CONCERNING BIG BROTHER and created in the context of or RELATING TO the development, pre-production, or production of GLASS HOUSE.

Req. No. 2:  All series bibles, series and episode outlines, dailies, story training manuals, master control room manuals, competition pitches, competition outlines, format pitches, format outlines, and other DOCUMENTS REFLECTING the format, content, production methods, story-producing methods, or filming methods for GLASS HOUSE.

Req. No. 3:  All DOCUMENTS, including but not limited to blueprints, renderings, plans, drawings, and design specifications, that RELATE TO the art direction, technical set-up, or design of the house featured on GLASS HOUSE.

Req. No. 4:  All DOCUMENTS REFLECTING the latest and most recent version of any episode of GLASS HOUSE, regardless of whether the episode is in a pre-broadcast version that is not final.

Plaintiff further requests that the Court order that ABC provide CBS with answers to certain questions that deponent Kenny Rosen was improperly instructed not to answer at this deposition, including (i) why he had the *Big Brother* HouseGuest manual "typed up"; (ii) whether he consulted with counsel before providing the manual to *Glass House* employee Tom Friedman; (iii) the dates of any communications with counsel regarding the manual; and (iv) what happened to the HouseGuest manual after Rosen asked Friedman to "type it up."  Plaintiff requests that the Court order that Rosen appear immediately and answer the questions which he was instructed not to answer.

This Notice of Motion and Motion is based on the attached Joint Stipulation, all points and authorities cited therein, the attached exhibits thereto, and any relevant matters of which the Court may take judicial notice.

DATED:     June 13, 2012

SCOTT A. EDELMAN
THEANE EVANGELIS KAPUR
BLAINE H. EVANSON
MICHAEL W. SEITZ
GIBSON, DUNN & CRUTCHER LLP

By: _____/s/ Scott A. Edelman_____
            Scott A. Edelman

SCOTT A. EDELMAN, SBN 116927
SEdelman@gibsondunn.com
MICHAEL W. SEITZ, SBN 271136
MSeitz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
Los Angeles, CA 90067-3026
Telephone: 310.552.8500
Facsimile: 310.551.8741

THEANE EVANGELIS KAPUR, SBN 243570
TKapur@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
BEvanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Plaintiff,
CBS BROADCASTING INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| CBS Broadcasting Inc., | CASE NO. 2:12-CV-04073 GAF (JEMx) |
|---|---|
| Plaintiff, | **DISCOVERY MATTER** |
| v. | **JOINT STIPULATION REGARDING ADDITIONAL DISCOVERY SOUGHT BY CBS** |
| American Broadcasting Companies Inc., et al., | |
| Defendants. | [[Proposed] Order; Declaration of Theane Evangelis Kapur in Support of Joint Stipulation filed concurrently; Defendants' declarations and exhibits to be filed separately] |
| | **Hearing:** |
| | Date: None set |
| | Time: None set |
| | Judge: Hon. John E. McDermott |

4

# TABLE OF CONTENTS

Page

I.      INTRODUCTORY STATEMENTS ................................................................. 1

    A.     Plaintiff CBS's Introductory Statement ........................................... 1

    B.     Defendants' Introductory Statement ................................................ 3

II.     PLAINTIFF CBS'S ARGUMENT ............................................................... 6

    A.     The Material Sought Here Is Relevant to CBS's Claims and Is Likely to Yield Highly Probative Information ................................ 6

    B.     Defendants' Trade Secret Objections Should Not Obstruct Discovery .......................................................................................... 9

    C.     Expedited Discovery is Additionally Warranted Because of Rosen's Admitted Spoliation of Highly Relevant Documents ........ 11

III.    DEFENDANTS' ARGUMENT ................................................................... 11

    A.     There Is No Good Cause For An Expedited Schedule .................. 11

    B.     The Additional Expedited Copyright Discovery Sought By CBS Would Serve No Purpose ....................................................... 12

    C.     The Additional Trade Secret Discovery Demanded By CBS Is An Ill-Disguised Fishing Expedition ........................................... 14

    D.     CBS's Conversion and Unfair Competition Claims Do Not Provide A Means To Circumvent the Trade Secret Disclosure Requirements ............................................................................... 20

    E.     The Expedited Requests Are Extremely Overbroad and Burdensome .................................................................................. 21

    F.     CBS's Effort To Raise Its Privilege Dispute Is Procedurally Improper. ...................................................................................... 23

    G.     CBS's Spoliation Allegations Do Not Justify Expedited Discovery. ..... 26

IV.     CBS'S DOCUMENT REQUESTS, PROPOSED SCHEDULE, AND STATEMENT ON PRIVILEGE ISSUES ................................................... 26

    A.     Request 1:  Documents Concerning *Big Brother* And Relating To Specified Aspects Of The Production Of *Glass House* .......................... 26

        1.     CBS's Statement:  Request No. 1 is Narrowly Tailored and Concerns Documents Obviously Relevant to this Lawsuit ........... 26

        2.     Defendants' Response ........................................................... 29

    B.     Request 2:  Certain Categories Of Documents Reflecting Specified Aspects Of The Format, Content, and Production Methods Of *Glass*

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

*House* ...................................................................................... 31

4

    1.    CBS's Statement:  Request No. 2 Goes to Materials Relevant to Defendants' Theft of *Big Brother* .............................. 31

5

6

    2.    Defendants' Response ....................................................... 32

C.    Request 3:  Documents Related To Design Of The House On *Glass House* .................................................................................... 36

7

8

    1.    CBS's Statement:  The Documents Relating to the Design of the House on *Glass House* Are Relevant ...................................... 36

9

10

    2.    Defendants' Response ....................................................... 36

D.    Request 4:  Documents Reflecting The Most Recent Version Of Any Episode Of *Glass House* ................................................ 37

11

12

    1.    CBS's Statement:  Documents Reflecting the "Most Recent Version" of *Glass House* Episodes Are Undoubtedly Relevant to CBS's Claims ................................................. 38

13

14

    2.    Defendants' Response ....................................................... 38

15

E.    CBS's Proposed Schedule ........................................................ 39

16

    1.    CBS's Statement:  CBS's Proposed Schedule is Reasonable in Light of *Glass House*'s Airing and Rosen's Spoliation of Documents ..................................................................... 39

17

18

    2.    Defendants' Response ....................................................... 40

19

F.    Privilege Issues Regarding Instructions to Kenny Rosen Not to Answer Deposition Questions Concerning Having *Big Brother*'s Manuals Typed Up and Distributed to ABC In-House Counsel ............ 41

20

21

    1.    CBS's Statement ............................................................... 41

22

    2.    Defendants' Response ....................................................... 43

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A. Farber & Partners, Inc. v. Garber*,
234 F.R.D. 186 (C.D. Cal. 2006)..................................................................42

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005)......................................................................21

*Advantacare Health Partners v. Access IV*,
2004 WL 1837997 (N.D. Cal. 2004)............................................................11

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
819 F. Supp. 2d 1001 (E.D. Cal. 2011)......................................................17

*American Legalnet, Inc. v. Davis*,
673 F. Supp. 2d 1063 (C.D. Cal. 2009)......................................................12

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
No. 11-cv-01846, 2011 WL 1938154 (N.D. Cal. May 18, 2011) .........................23

*Art of Living Foundation v. Does 1-10*,
No. 10-cv-05022, 2012 WL 1565281 (N.D. Cal. May 1, 2012) ..........................20

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975)......................................................................42

*Brescia v. Angelin*,
172 Cal. App. 4th 133 (2009) ....................................................................10

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
208 F.3d 1142 (9th Cir. 2005)....................................................................25

*CBS Broadcasting, Inc. v. ABC, Inc.*,
No. 02 Civ. 8813, 2003 U.S. Dist LEXIS 20258 (S.D.N.Y. Jan. 14, 2003) ............3

*Clarke v. American Commerce Nat. Bank*,
974 F.2d 127 (9th Cir. 1992) .....................................................................25

*Comcast of Los Angeles, v. Top End Int'l, Inc.*,
2003 WL 22251149 (C.D. Cal. 2005) ..........................................................42

*Countrywide Fin. Corp. v. Bundy*,
187 Cal. App. 4th 234 (Cal. Ct. App. 2010)...................................................8

*Facebook, Inc. v. Various, Inc.*,
2011 WL 2437433 (N.D. Cal. June 17, 2011).................................................21

*Gabriel Technologies Corp. v. Qualcomm, Inc.*,
No. 08cv1992, 2011 WL 6152240 (S.D. Cal. Dec. 12, 2011) ............................17

*Goldblum v. Nat'l Broadcasting Corp.*,
584 F. 2d 904 (9th Cir. 1978).....................................................................39

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) .................................................................. 7

*Harold Lloyd Corp. v. Witwer*,
65 F.2d 1 (9th Cir. 1933) ............................................................................ 27

*Imax Corp. v. Cinema Technologies, Inc.*,
152 F.3d 1161 (9th Cir. 1998) .................................................................... 19

*JustMed, Inc. v. Byce*,
600 F.3d 1118 (9th Cir. 2010) .................................................................... 10

*K. C. Multimedia, Inc.* v. *Bank of Am. Tech. & Operations, Inc.*,
171 Cal. App. 4th 939 (2009) ..................................................................... 21

*Lisa Frank, Inc. v. Impact Int'l, Inc.*,
799 F. Supp. 980 (D. Ariz. 1992) .......................................................... 28, 30

*Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*,
642 F. Supp. 1031 (N.D. Ga. 1986) ............................................................ 27

*Perlan Therapeutics, Inc. v. Superior Ct.*,
178 Cal. App. 4th 1333 (2009) ............................................................. 11, 17

*Plummer v. Day/Eisenberg, LLP*,
184 Cal. App. 4th 38 (Cal. Ct. App. 2010) .................................................. 7

*Pyro Spectaculars, Inc. v. Souza*,
2012 WL 968084 (E.D. Cal. Mar. 21, 2012) .............................................. 10

*Semitool Inc. v. Tokyo Electron America, Inc.*,
208 F.R.D. 273 (N.D. Cal. 2002) ............................................................... 21

*Sheldon Abend Revocable Trust v. Spielberg*,
748 F. Supp. 2d 200 (S.D.N.Y. 2010) ........................................................ 13

*Surfvivor Media, Inc. v. Survivor Prods.*,
406 F.3d 625 (9th Cir. 2005) ........................................................................ 7

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ...................................................................... 27

*United States v. Am. Optical Co.*,
39 F.R.D. 580 (N.D. Cal. 1966) .................................................................... 7

*United States v. Talao*,
222 F.3d 1133 (9th Cir. 2000) .................................................................... 43

*Universal Analytics v. MacNeal-Schwendler Corp.*,
707 F. Supp. 1170 (C.D. Cal. 1989) ........................................................... 19

*Walker v. Time Life Films, Inc.*,

# TABLE OF AUTHORITIES
(continued)

Page(s)

615 F. Supp. 430 (S.D.N.Y. 1985) .................................................................. 13

*Zella v. E.W. Scripps Co.,*
529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................... 5, 30

## Other Authorities

"*Big Brother* Rules" (UK) .............................................................................. 18

"Pinoy *Big Brother* Rulebook" (Phillipines) .............................................. 18

## Rules

Fed. R. Civ. P. 26 ................................................................................... 2, 7, 9

Fed. R. Civ. P. 26(b) ......................................................................................... 7

Fed. R. Civ. P. 26(b)(5) ................................................................................. 42

Fed. R. Civ. P. 26(b)(5)(a)(ii) ...................................................................... 24

Fed. R. Civ. P. 34 ........................................................................................ 6, 7

## Regulations

37 C.F.R. § 202.1 ........................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff CBS Broadcasting Inc. ("CBS") and Defendants American Broadcasting Companies, Inc. ("ABC"), The Walt Disney Company, Disney Enterprises, Inc., ABC, INC. (dba Disney/ABC Television Group), Keep Calm and Carry On Productions, Inc., Corie Henson, Michael O'Sullivan, Kenny Rosen, and others (collectively, "Defendants") submit this Joint Stipulation per this Court's June 4, 2012 Order.

## I.   INTRODUCTORY STATEMENTS

### A.   Plaintiff CBS's Introductory Statement

This is a suit about stealing from *Big Brother* in various respects not limited to just copyright infringement and misappropriation of trade secrets. In the extremely limited discovery that has happened thus far, CBS has already unearthed evidence of rampant theft—from *Glass House*'s Executive Producer admitting that he directed *Glass House* personnel to "type up" *Big Brother*'s confidential and proprietary manuals, to other evidence showing that *Glass House*'s internal materials do in fact lift language from *Big Brother*'s materials. And although *Glass House*'s Executive Producer Kenny Rosen tried to explain that *Glass House* was supposedly based on the book *Hunger Games* (a dystopian teenage fictional series in which teenagers are chosen by lot to compete in a contest where they must kill each other, rather than adults who are cast to live in a house and face periodic eviction), Rosen later admitted that *Glass House* is more similar to *Big Brother* than the *Hunger Games*, conceding that the two have significant common elements and substantial similarities, while struggling to identify only trivial differences. (*See* Ex. M to the June 4, 2012 Declaration of Theane Evangelis Kapur at 20-21, 150-223, 285-86.) As a result, CBS intends to seek immediate relief, through a TRO or a preliminary injunction, which will likely be on file by the time this joint stipulation is even completed. CBS therefore needs documents as soon as possible, and the schedule which CBS proposes—seeking production of documents within 48 hours of this Court's ordering production—is undoubtedly reasonable.

Despite the imminence of *Glass House*'s June 18 airing and the apparent evidence of theft from *Big Brother*, Defendants have repeatedly objected to providing any discovery whatsoever, centering their objections on only isolated aspects of CBS's trade secret claims (namely, as-yet-unspecified objections to CBS's trade secret disclosures) and isolated aspects of CBS's copyright claims.  But this suit is not just about those two claims.  CBS asserts other claims, including unfair competition and conversion, and this is a suit premised not just on stopping misappropriation of trade secrets or infringement of *Big Brother*'s copyright, but also stopping Defendants' overall efforts to steal from *Big Brother*, period.

In a suit premised on stopping the overall theft of *Big Brother*, there can be no dispute that the materials sought here—primarily documents that <u>both</u> concern *Big Brother* and relate to targeted aspects of *Glass House*'s production—constitute discoverable "matter that is relevant to any party's claim or defense" or at the very least is "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26.  And given Rosen's admission that he had *Glass House* personnel "type up" *Big Brother*'s confidential and proprietary internal manuals—an admission that explains why *Glass House*'s internal materials have verbatim similarities to *Big Brother*'s when compared side-by-side—there can be no doubt that theft is afoot here and that, at the very least, CBS is entitled to discovery to get to the bottom of it.

The only remaining question should therefore be about the timing of such discovery.  CBS has explained that it needs discovery urgently because *Glass House* is about to air and because Defendants' *ongoing* misappropriation and theft are causing CBS irreparable harm.  And in light of Rosen's admission under oath that he did not understand his obligations to preserve evidence, and that he had in fact deleted relevant emails after the filing of this lawsuit, immediate discovery is required to prevent the further spoliation of evidence.  (Ex. M to June 4, 2012 Declaration of Theane Evangelis Kapur at 40-41.)

Defendants nonetheless persist in refusing this discovery.  While CBS has

produced trade secret-related discovery, Defendants have repeatedly refused to
produce any trade secret-related discovery—or discovery pertaining to the rest of the
case, for that matter.   Only after ordered to do so by this Court did Defendants
produce incomplete documents reflecting the format of *Glass House*.  That ABC did so
in just over two hours suggests that further discovery on an expedited basis would not
be too burdensome, particularly in light of CBS's targeted requests here.  That
Defendants still have yet to produce any internal correspondence—despite Rosen's
admissions that he consulted *Big Brother*'s confidential, proprietary documents in the
development of <u>*Glass House*</u> and instructed *Glass House* personnel to copy *Big
Brother*'s manual wholesale and that he has been deleting emails *even after this
lawsuit began*—are additional cause for concern and merit expedited discovery.
Finally, CBS should also be entitled to a further opportunity to depose Rosen regarding
his admission that he instructed *Glass House* personnel to copy *Big Brother*'s
HouseGuest Manual—a subject CBS could not explore because ABC's counsel
improperly invoked privilege, preventing Rosen from answering even basic questions
on nonprivileged topics, such as when he directed others to copy *Big Brother*'s
materials.

**B.     Defendants' Introductory Statement**

This case is about a television network with a stale franchise – *Big Brother* –
that hopes aggressive litigation tactics will disrupt the premiere of a major
competitor's new, state-of-the-art reality show.  Nor is this CBS's first effort in this
regard.  *See CBS Broadcasting, Inc. v. ABC, Inc.,* No. 02 Civ. 8813, 2003 U.S. Dist
LEXIS 20258 (S.D.N.Y. Jan. 14, 2003), at *42 (rejecting CBS motion for preliminary
injunction because ABC reality show *I'm A Celebrity, Get Me Out Of Here!* was not
substantially similar to *Survivor*).  CBS's copyright claim here is no stronger.  Despite
CBS's wishes to the contrary, it cannot copyright the reality show genre.

CBS's trade secret claim is also wholly without merit.  Although on June 1 this
Court expressly limited the June 3 deposition of Kenny Rosen to copyright issues,

CBS used the deposition primarily to take trade secret discovery.  Defendants objected but did not seek the Court's intervention during that deposition.  After seven hours of examination CBS now claims to have discovered the *Big Brother* "trade secrets" like

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████

Obviously, these are not trade secrets.  If CBS were not bent on stopping the premiere of *The Glass House* by any means necessary, it would never claim them as such.  But this joint stipulation is not about the merits of the case, which are currently before Judge Feess in the form of CBS's application for a Temporary Restraining Order.  Rather, the issue before the Court is whether CBS is entitled to additional extremely expedited and highly onerous discovery, beyond the discovery that Defendants have already provided and upon which CBS has based its TRO.  There is no good cause for additional expedited discovery.  This Court should address CBS's sweeping requests for additional, marginally relevant documents as part of regular discovery after a Rule 26(f) conference (which has not yet occurred) and under the normal timelines and procedures for discovery.

With respect to CBS's copyright claim, Defendants produced documents containing the most complete descriptions of *The Glass House* available*,* as well as a full Sunday deposition of Kenny Rosen, the Executive Producer of *The Glass House*. Using that discovery, at around midnight on June 7, CBS filed an *ex parte* application for a temporary restraining order seeking to enjoin the premiere of *The Glass House*. CBS's expert filed a 28-page report analyzing the discovery to make his case for substantial similarity between *Big Brother* and *The Glass House* (and has recently filed an additional, 13-page rebuttal report).  In short, CBS obtained the expedited discovery it needed to make its (flawed) claim for emergency relief.

But CBS says it requires vastly more expedited copyright discovery so urgently

that the Court should order Defendants to produce it on an impossible *48 hour* turn-around.  According to CBS, it needs discovery about Defendants' "intent to copy," which it claims bears on Defendants' access to *Big Brother* materials.   This is a red herring.  *Big Brother* has been on the air for 13 years.  Everyone in America with a TV has total access to its creative expression.  Even if CBS were to obtain evidence tomorrow that every employee at *The Glass House* engaged in a massive conspiracy to copy *Big Brother* (which, of course, they did not), that would not provide *more* evidence of access beyond that which CBS already has.  Nor would such a confession relieve CBS of its obligation to demonstrate substantial similarity.  *Zella v. E.W. Scripps Co.,* 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007).  In short, CBS's overbroad "intent to copy" discovery is of no practical use for demonstrating infringement here and cannot justify the extraordinarily expedited and burdensome discovery proposed.

CBS also claims that its expedited discovery requests are relevant to copyright because they show the "look and feel" of *The Glass House*.  The show will premiere on ABC on June 18.  That will be the best and only relevant evidence of the look and feel of *The Glass House*.  No reason exists in law or logic to order expedited discovery on a 48-hour turn-around that is only tangentially relevant to the look and feel of a television show that will actually air shortly.

With respect to CBS's trade secret claim, CBS has also already obtained significant expedited discovery, since it spent most of the day with Mr. Rosen fishing for evidence of trade secret misappropriation, despite this Court's instruction that the deposition was to be limited to copyright issues.  It found none.[1]  In any case, despite the admonitions of Judge Feess and this Court, CBS continues to ignore the mandate of California Code of Civil Procedure Section 2019.210 ("Section 2019.210"), which

---

[1] The garden variety safety instructions described in the text are not trade secrets.  Moreover, as set forth in detail in the declaration of Mr. Rosen, CBS claims as its "trade secrets" information that is easily available from a simple Google search, or just from watching the end credits of *Big Brother*.  The Rosen Declaration is attached hereto as Exhibit 2 to the Declaration of Carolyn Luedtke ("Luedtke Decl.").

requires CBS to identify its trade secrets with "reasonable particularity."  Instead, CBS retains its absurdly broad designations of its alleged secrets, such as "the *Big Brother* production process, as a whole."  Trade secret discovery should be on hold until CBS provides an adequate trade secret disclosure.

Furthermore, as with its first two *ex parte* applications, CBS continues to propound discovery requests that Defendants cannot reasonably answer in the incredibly truncated timeframe CBS proposes.  CBS seeks to compel documents responsive to Request for Production Nos. 1-4.  A search for documents responsive to these requests would require ABC and Keep Calm & Carry On to search the files of the more than 150 people who work on *The Glass House* and collect nearly every document related to their work on the show.  This is a massive undertaking and one entirely unrelated to any expedited discovery request reasonably tailored to CBS's pending TRO.

Finally, CBS has tried to shoehorn a brand new meritless discovery dispute into this joint stipulation.  In yet another effort to circumvent this district's procedures for resolving discovery issues, CBS complains about the invocation of attorney-client privilege at Mr. Rosen's deposition.  CBS has never met and conferred on the issue, and the privilege dispute is procedurally improper to be submitted in this Joint Stipulation, whose subject, by court order, is "the remaining discovery disputes regarding documents that have not been produced."  June 4, 2012 Amended Minute Order, Dkt. 29, at 1.  The Court should have the parties meet and confer and submit any remaining dispute under the Local Rules in a Joint Stipulation.

## II.    PLAINTIFF CBS'S ARGUMENT

### A.    The Material Sought Here Is Relevant to CBS's Claims and Is Likely to Yield Highly Probative Information

Federal Rule of Civil Procedure 34 permits a party to propound discovery requests seeking the inspection or copying of documents and electronically stored information within the responding party's possession, custody, or control, as long as

the requested materials are discoverable under Federal Rule of Civil Procedure 26(b). Fed. R. Civ. P. 34. Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* "The burden of showing good cause for production of documents may be sustained by showing relevancy and necessity." *United States v. Am. Optical Co.*, 39 F.R.D. 580, 585 (N.D. Cal. 1966).

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citation omitted). Relevance is construed broadly for the purpose of discovery, and where relevance is in doubt, Federal Rule of Civil Procedure 26 indicates that the Court should be permissive. *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).

There can be no doubt under these standards that the materials sought—for example, certain documents reflecting the format, content, production, technical set-up, and recent episodes (even if not final) of *Glass House*—go to the heart of this lawsuit, which is whether Defendants and *Glass House* have unfairly taken advantage of CBS's work in developing *Big Brother*.

CBS is advancing several claims, not just copyright and trade secrets. And the discovery sought here is relevant to the *entirety* of CBS's lawsuit. For example, CBS advances a claim of conversion (Count 8), one element of which is "the defendants' conversion by a wrongful act or disposition of property rights." *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th 38, 45 (Cal. Ct. App. 2010). Documents relating to both *Big Brother* and *Glass House*'s production surely go to whether the latter is wrongly stealing from the former, which would prove not just conversion, but also go to CBS's UCL claim (Count 3) alleging unlawful competition (which is predicated on conversion as well as the other causes of action CBS alleges). CBS is

also advancing a UCL claim alleging *unfair* competition, and that claim "entails examination of the impact of the [unfair] practice or act on its victim balanced against the reasons, justifications and motives of the alleged wrongdoer," requiring a court to "weigh the utility of the defendants' conduct against the gravity of the harm to the alleged victim"—all inquiries that require a developed factual record concerning documents relating to both *Big Brother* and specified aspects of *Glass House*'s production.  *Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 257 (Cal. Ct. App. 2010) (alterations omitted).

Based on the limited documents already produced (which were cherry-picked by Defendants) and the deposition of Kenny Rosen, there is already ample reason to believe that *Glass House*'s production has been relying on confidential and proprietary material from *Big Brother*.  For example, Rosen testified that he showed the *Big Brother* HouseGuest Manual—which is marked as "confidential" on its face—to Tom Friedman (a production coordinator who since quit *Glass House* after this lawsuit began), asking Friedman to "type it up" and send it to one of ABC's in-house counsel. (Ex. M to June 4, 2012 Declaration of Theane Evangelis Kapur at 84-95.)  Rosen also testified that he consulted *Big Brother*'s Master Control Room Schedule in determining how to staff *Glass House*.  (*Id.* at 80-81.)  Meanwhile, a comparison of *Big Brother*'s HouseGuest Manual and *Glass House*'s internal materials given to contestants leaves no doubt as to where *Glass House* got the materials.  Indeed, nearly every topic covered in the *Glass House* instructional document is also in the *Big Brother* manuals, ███████████████████████████████████████████████ ███████████████████████ Consider other examples of similarities between *Big Brother*'s manuals and *Glass House*'s internal documents:

| ***Big Brother* HouseGuest Manuals** | ***Glass House* Instruction Sheet** |
| --- | --- |
| ███████████████████████ | ███████████████████████ |



There can be no doubt then, that far from being a fishing expedition, CBS's document requests are highly likely to turn up additional evidence revealing the full extent of how Defendants have wrongly taken what is *Big Brother*'s.  And in the case where that theft is the very premise of CBS's lawsuit, discovery of documents relating to various aspects of the production of *Glass House* <u>and</u> relating to *Big Brother* will no doubt be "reasonably calculated to lead to the discovery of admissible evidence" and go to matters "relevant to any party's claim or defense."  Fed. R. Civ. P. 26.

**B.    Defendants' Trade Secret Objections Should Not Obstruct Discovery**

For the reasons given above, Defendants' repeated objections—which center

1  solely on one claim, trade secrets—should not obstruct discovery of material relevant

2  to the *entire* case.  Nor, if this were a case solely about trade secrets, should

3  Defendants' objections hold up discovery.  *Ongoing* misappropriation causes

4  irreparable harm.  *See, e.g.*, *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th Cir. 2010)

5  ("The term 'use' in the context of misappropriation" contemplates any "use that

6  reduces the value of the trade secret"); *Pyro Spectaculars, Inc. v. Souza*, 2012 WL

7  968084, at *15 (E.D. Cal. Mar. 21, 2012) (similar and granting a preliminary

8  injunction).

9       CBS has already provided trade secret-related discovery, yet Defendants'

10  position is that discovery is not a two-way street.  Indeed, since last week, Defendants

11  have had CBS's confidential and proprietary *Big Brother* manuals and CBS's third and

12  final trade secret designations (Dkt. 21 (Ex. M)), which simply provide additional

13  details on the very same trade secrets CBS has asserted since the filing of its

14  complaint.[2]  CBS's disclosures are plainly specific enough for discovery to go forward;

15  "[t]he trade secret designation is to be liberally construed, *and reasonable doubts*

16  *regarding its adequacy are to be resolved in favor [of] allowing discovery to go*

17  *forward.*"  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 143 (2009) (emphasis added).

18  This is particularly true where Defendant Rosen has now admitted to disclosing and

19  misappropriating CBS's trade secrets under oath.

20       Until now, Defendants have managed to challenge only isolated aspects of

21  CBS's trade secrets disclosures.  (*See, e.g.*, Dkt. 24 at 20 (disputing only two examples

22  out of fourteen from CBS's third trade secret letter.)  Until Defendants provide some

23  specific indication of how CBS's third trade secret designations are supposedly

24  inadequate—and how Defendants hope to add anything further beyond the objections

---

26  [2]  CBS has already agreed to allow the Individual Defendants and certain in-house
27  attorneys at ABC to view CBS's trade secrets letter, which has previously been
    subject to an "outside counsel eyes only" designation.  (*See* June 4, 2012
28  Declaration of Theane Evangelis Kapur ¶ 6.)

they have already provided in briefing the previous two *ex parte* applications, in which

case CBS will respond in its supplemental memorandum—there no reason to prohibit

discovery, let alone when CBS's requested discovery goes to issues beyond trade

secrets.  "Trade secret identification does not require every minute detail of the trade

secret," nor "a miniature trial on the merits of a misappropriation claim before

discovery may commence."  *Perlan Therapeutics, Inc. v. Superior Ct.*, 178 Cal. App.

4th 1333, 1346 (2009).

**C.    Expedited Discovery is Additionally Warranted Because of Rosen's
       Admitted Spoliation of Highly Relevant Documents**

Expedited discovery is also warranted here because Kenny Rosen admitted that

his "practice is to delete e-mails that I don't need" and that he has continued to delete

e-mails relating to *Glass House* after this lawsuit was filed.  (Ex. M to June 4, 2012

Declaration of Theane Evangelis Kapur at 28, 40-41.)  When asked whether he

understood that CBS had requested that emails relating to *Glass House* be retained, he

testified, "No I did not understand that."  (*Id.* at 41.)  While Rosen's counsel

represented that the deleted emails could be recovered from Rosen's temporary deleted

emails folder (*id.* at 74), neither Rosen nor his counsel could say how long his emails

are retained in that folder (*id.* at 85).  In short, even after CBS sent Defendants cease-

and-desist letters, there was an over one-month-long period where Rosen, and perhaps

other Defendants, have been deleting relevant emails to this case, warranting

immediate production.  *See, e.g.*, *Advantacare Health Partners v. Access IV*, 2004 WL

1837997, at *1 (N.D. Cal. 2004) (granting TRO and ordering immediate discovery and

forensic scanning of hard drives).

**III.    DEFENDANTS' ARGUMENT**

**A.    There Is No Good Cause For An Expedited Schedule**

It is important to bear in mind that this is a motion for extraordinarily expedited

discovery.  It may be that some of CBS's requests for documents will be appropriate

during the ordinary course of discovery and after an adequate Section 2019.210

disclosure.  But this is not the question presented to the Court.  The question is whether
Defendants should be subjected to overbroad and far-ranging document discovery on
very short time deadline (CBS proposes an extraordinary – and impossible – 48 hour
turnaround) prior to the commencement of regular discovery under the Federal Rules
of Civil Procedure, all during Defendants' busy schedule preparing a new show for
production. And where CBS has not adequately defined its trade secrets.  The answer
to that hopefully will be "no."

The Court should evaluate the scope of the requested discovery and the
"surrounding circumstances" to determine whether there is "good cause" to allow
expedited discovery.  *See American Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063,
1069 (C.D. Cal. 2009) (denying motion for expedited discovery where discovery was
"not 'narrowly tailored to obtain information relevant to a preliminary injunction
determination' and instead goes to the merits of plaintiff's claims in [the] action")
(citation omitted).  Factors for this Court to consider include "the purpose for
requesting the expedited discovery," "the breadth of the discovery requests," and "the
burden on the defendants to comply with the requests'"  *Id.* at 1067 (citation omitted).
Given the "surrounding circumstances" in this case, there is no good cause to grant the
additional sweeping expedited discovery requested by CBS.

**B.**   **The Additional Expedited Copyright Discovery Sought By CBS Would
Serve No Purpose**

Defendants have already provided CBS with documents containing the most up-
to-the-minute descriptions of *The Glass House*, as well as a full (and extremely
burdensome, in light of the timing) day of deposition testimony from the Executive
Producer of *The Glass House*.  *See* Declaration of Carolyn Hoecker Luedtke ("Luedtke
Decl.") ¶¶ 2-3, 5.  CBS used this discovery to prepare an expert report on ostensible
substantial similarities between *Big Brother* and *The Glass House*, and to move for a
TRO to stop supposed prospective infringement of its copyright.

Nevertheless, CBS insists it needs vastly more "copyright" discovery and needs

it immediately – within 48 hours if this Court grants its application – because *inter alia*, documents showing how *The Glass House* developed, are critical to CBS's copyright claim.

As Judge Feess explained, "[r]egardless of what might have been said or done in the process of the development of the anticipated ABC television program, the question of [copyright] infringement will turn largely on the similarity of expression and not on the similarity of the idea behind the two programs."  Dkt. No. 19, at 1 (emphasis added).

Even if the documents CBS requests meet ordinary discovery standards (as CBS urges they do), they do not come near meeting the standard for imposing the special burdens of expedited discovery on Defendants.  This is particularly so because, as already discussed, *The Glass House* will premiere on ABC on June 18.  Self-evidently, the show itself represents the best evidence of the look and feel of the show, and of its allegedly infringing creative expression.  The expedited discovery process is not an appropriate vehicle for the gathering and production of documents that will be rendered nearly irrelevant within the week.  *See Walker v. Time Life Films, Inc.,* 615 F. Supp. 430, 435 (S.D.N.Y. 1985) (consideration of earlier versions of a work "is too unreliable in determining substantial similarity"); *Sheldon Abend Revocable Trust v. Spielberg,* 748 F. Supp. 2d 200, 205 n.4 (S.D.N.Y. 2010) ("earlier drafts of a book, manuscript, or screenplay are irrelevant" to the determination of substantial similarity); *see also* 37 C.F.R. § 202.1 ("Ideas, plans, methods, systems, or devices, as distinguished from the particular manner in which they are expressed" are quite simply not subject to copyright.).

CBS also argues its copyright claims in part justify its Request No. 1 for all communications between the Defendants – well over 100 people – concerning Big Brother that were created during the course of developing *The Glass House*.  CBS's theory is that such communications might be relevant to show Defendants' access to *Big Brother*.  As discussed in detail below in response to CBS's Request No. 1, CBS

already has all the evidence of access it is possible for CBS to have, and the documents CBS seeks could add very little more.  Again, CBS offers no argument that could possibly rationalize expediting copyright discovery in the way CBS envisions.

**C.     The Additional Trade Secret Discovery Demanded By CBS Is An Ill-Disguised Fishing Expedition**

CBS has already taken hours of deposition testimony (contrary to the Court's instruction on June 1) regarding Defendants' allegedly trade secret production processes. ███████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ CBS has also been provided with numerous documents related to CBS's trade secret allegations, including:

- A draft and a final *The Glass House* Player Handbook;[3]
- Plans for the three approved contestant challenges;[4]
- A detailed floor plan of *The Glass House*, including the location of cameras;[5]

---

[3] These relate to alleged Trade Secret No. 1 (*Big Brother* manuals).  The manuals are attached as Exhibits A and B to the Declaration of Deborah Anderson lodged in conjunction with Defendants' TRO opposition. The Anderson declaration is attached as Luedtke Decl. Ex. 6.

[4] CBS's Complaint alleged that Defendants had misappropriated information about CBS's "process of successfully setting up and performing complicated challenges." Compl. ¶ 64(e).  CBS is apparently no longer pursuing trade secrets relating to challenges. *See* Luedtke Decl. Ex. 7 (May 31, 2012 letter).

- The planned segments and episode structure of *The Glass House;*[6]
- Schematics of the master control room for *The Glass House;*[7] and
- A list of video equipment and media management software, a network diagram, and a post-production workflow for *The Glass House.*[8]

Luedtke Decl. ¶¶ 2-4.  CBS, in other words, has already received far more than it is entitled to under Section 2019.210.

At the June 1 telephonic hearing, this Court allowed Defendants time to consider CBS's May 31 trade secret disclosure to assess its adequacy.  Defendants have done so and have determined that it remains wholly inadequate.  The May 31 trade secret disclosure (attached to the Luedtke Declaration as Exhibit 7) lists 14 alleged trade secrets, but it does not state CBS's purported trade secrets with reasonable particularity as required by Section 2019.210.  The inadequacy of these 14 alleged trade secrets are discussed in detail in the Appendix attached to the Luedtke Declaration as Exhibit 1.  The inadequacy is further addressed in the Declarations of Kenny Rosen and Corie Henson submitted herewith as Exhibits 4 and 8.

In sum, CBS purports to identify allegedly secret "processes" used to make *Big Brother*.  But as a careful review of the Appendix and the Declarations of Kenny Rosen and Corie Henson reveal, there is no secret to this process.  Instead, the alleged trade secrets claimed by CBS are all jobs, equipment, and procedures commonly

---

*(Cont'd from previous page)*

[5] CBS alleges that Defendants misappropriated the layout of the *Big Brother* house and its "confidential placement of cameras." *See* Exhibit 7 (May 31, 2012 letter).

[6] CBS alleges that its use of "evergreen" segments is a trade secret. *See* Luedtke Decl. Ex. 7 (May 31, 2012 letter)..

[7] CBS previously alleged that the "layout and functionality" of its master control room is a trade secret, *See* Dkt. No. 10-1, though it no longer appears to be pursuing that claim. *See* Luedtke Decl. Ex. 7 (May 31, 2012 letter).

[8] CBS previously alleged that its "technical setup," Compl. ¶ 64(e), and its "processes for digitization," Dkt. No. 10-1 are trade secrets, though it no longer appears to be pursuing those claims.  *See* Luedtke Decl. Ex. 7 (May 31, 2012 letter).

known and used by persons in the reality television production industry.  As such, they

are not reasonably particular trade secrets that satisfy the requirements of Section

2019.210.  CBS's purported trade *secrets* are nothing more than widely-utilized reality

television production practices, many of which are not even being used on *The Glass

House*.  *See* Luedtke Decl. Ex. 1 (Appendix).

Section 2019.210 prohibits CBS from commencing trade secret discovery until

it has identified its alleged trade secrets "with reasonable particularity."  It is this

statute that Judge Feess alluded to in his initial order when he held that "the trade

secret discovery will be driven in significant part by the adequacy of CBS's disclosures

and whether those disclosures identify properly protectable trade secrets."  Dkt. No.

19, at 1.

Section 2019.210 "was enacted to curb unsupported trade secret lawsuits

routinely commenced to harass competitors and former employees"— precisely what

Defendants face in this case from CBS.  *See Computer Economics*, 50 F. Supp. 2d at

992.  The California legislature "understood that plaintiffs in trade secret cases are

often unable to identify any trade secrets," and that such claims are "especially prone

to discovery abuse."  *Id.*  Without a clear and particularized prior identification of trade

secrets, "neither the court nor the defendant can delineate the scope of permissible

discovery." *Id.*  Worse, without Section 2019.210, a plaintiff could "conform

misappropriation claims to the evidence produced by the defendant in discovery," or in

other words, embark on a fishing expedition, deposing former employees and rifling

through their files in search of a claim.  *Id.*  By contrast, a particular identification of

trade secrets before discovery commences "promotes well-investigated claims, frames

the appropriate scope of discovery, prevents needless discovery disputes, and enables

defendants to form complete and well-reasoned defenses."  *Id.*

CBS's purported effort to identify its alleged secrets with "reasonable

particularity" fails.

To begin, purported trade secret no. 14 renders the disclosure deficient.  CBS
has "identified" as its secret everything *Big Brother* has ever done (*See* No. 14, "The
*Big Brother* production process as a whole"), and now seeks every document
referencing *Big Brother* in any way (*See* Request For Production No. 1).  It is difficult
to conceive of a more transparent attempt to get documents first and figure out the
claim later – precisely the abusive discovery tactic that Section 2019.210 was enacted
to prohibit.  *See Computer Economics*, 50 F. Supp. 2d at 992; *Perlan Therapeutics,
Inc. v. Superior Court,*- 178 Cal. App. 4th 1333, 1350 (2009) ("[Plaintiff] is not
entitled to include broad, 'catch-all' language as a tactic to preserve an unrestricted,
unilateral right to subsequently amend its trade secret statement.  If [Plaintiff] does not
know what its own trade secrets are, it has no basis for suggesting defendants
misappropriated them.").  "The *Big Brother* production process as a whole" is clearly
not a reasonably particular identification of a trade secret.  *See id; see also Gabriel
Technologies Corp. v. Qualcomm, Inc.*, No. 08cv1992, 2011 WL 6152240, at *5 (S.D.
Cal. Dec. 12, 2011) (insufficient description of Plaintiff's "procedural approach");
*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,  819 F. Supp. 2d 1001, 1019-1020
(E.D. Cal. 2011) (insufficient description of Plaintiff's "Workflow Processes and
Flows"); *Perlan*, 178 Cal. 4th at 1344 (disapproving of disclosures that consist of
"high-level, generic categories in which its alleged secrets are said to reside").  CBS
attempts to brush off the significant problem with No. 14 as an "isolated aspect" of its
disclosure, when in fact, it swallows the entire disclosure.  There will be no way to
craft appropriate trade secret discovery so long as it remains.

Even though alleged secret No. 14 is the biggest problem with CBS's disclosure
(and in fact, renders it fatally defective), it is far from the only problem.  For example,
alleged trade secret no. 1 identifies a set of manuals as secret in their entirety, without
identifying a single actual secret therein. This is improper.  *Perlan* held that the
plaintiff is not "entitled to hide its trade secrets in 'plain sight' by including surplusage
and voluminous attachments in its trade secret statement."  *Id.* at 1350, 1352 (finding

1   that, among other problems, the trade secret statement was defective because it

2   referenced "hundreds of pages of extra documents").  Again, until CBS identifies the

3   actual secrets within its manuals (if there are any), there will be no way to craft

4   appropriate discovery to determine if those alleged secrets have been misappropriated.

5          Moreover, within alleged secret no. 1, the "House Guest Manual" – about which

6   CBS makes a big fuss – is not a secret.  The House Guest Manual is set of common

7   sense instructions for contestants, ███████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████   ███████████████████████████████

10  ████████████████████████████████████

11  ███████████████████████████████████████

12  ████████████████████████████████████████████

13  ██████████████████████████████████████

14  ██████████████████████████████████

15  ████████████████████████████████████

16  ██████████████████████████

17  ██████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████

20         Furthermore, it is noteworthy that the House Guest Manual for *Big Brother* is

21  not marked on its face as confidential, employees were not told to keep it confidential,

22  and there was no effort to recollect the manual at the end of the season when

23  employees departed.  *See* Luedtke Decl. Ex. 2 (Rosen Decl. ¶ 35); *see also* Kapur

24  Decl. (attaching manuals).

25         In another example of the deficiency of the trade secret disclosure, ███████

26  █████████████████████████████████████  *See* No.'s 7, 10, and 11.

27  These are not a trade secret.  Instead, they are jobs, equipment, and procedures well

28  known throughout the reality television production industry.  In fact, tune in to *Big*

1  *Brother,* and the end credits display ███████████████████████████

2  ██████████████████████████████████ CBS needs to state what specifically

3  about its use of this commonly known job in reality television production is a trade

4  secret, and it needs to state that with reasonable particularity as required by Section

5  2019.210.  As currently set forth, secrets number 7, 10, and 11 are no more secret than

6  McDonald's disclosing a secret process of employing a "fry cook" or Baskin Robbins

7  disclosing a secret process of employing an "ice cream scooper."

8  ██████████████████████████████████████████████

9  ███████████████████████████████████████████But anyone

10  watching the show can see that the names in the credits are different at the end of each

11  episode.  Luedtke Decl. Ex. 2 (Rosen Decl. ¶ 36).  CBS also freely shared this fact on a

12  "behind the scenes" tour for journalists, one of whom wrote, "The show has a different

13  team of people for every episode."[4]   CBS is not only required to define a finite

14  universe of alleged trade secrets, but that disclosure must "describe the subject matter

15  of the trade secret with *sufficient particularity* to separate it from matters of general

16  knowledge in the trade."  *See Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d

17  1161, 1164-65 (9th Cir. 1998) (quoting *Universal Analytics v. MacNeal-Schwendler*

18  *Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989).  CBS has not told the Court how ██

19  █████████████████████████ is separate from "matters of general knowledge

20  in the trade."

21  ███████████████████████████████████████

22  █████████████████████████████████████████████

23  ████████████████████████████████████████

24  ██████████████████████████████████████████████

25  ████████████████████ CBS needs to disclose what about these commonly used

26  pieces of equipment is a secret.

---

28  [4] *See* Luedtke Decl. Ex. 2 (Rosen Decl. Ex. A (Reality Blurred website print-out)).

Defendants respectfully direct this Court to their Appendix (Exhibit 1 to the Luedtke Declaration) and the Rosen and Henson Declarations (Exhibits 2 and 8) for a complete discussion of all 14 purported trade secrets and the inadequacy of CBS's disclosure.

In the end, CBS must provide a proper identification of trade secrets under Section 2019.210 before trade secret discovery can commence.  Furthermore, given that any further revised identification will be CBS's *fourth* attempt to properly identify its trade secrets, Defendants respectfully request that the Court place appropriate limits on CBS's ability to force Defendants to continue to play the "trade-secret-of-the-week" game with CBS's shifting and meritless claims.[9] The next list of alleged trade secrets (if any) should be the last.  *See, e.g., Art of Living Foundation v. Does 1-10*, No. 10-cv-05022, 2012 WL 1565281, *23 (N.D. Cal. May 1, 2012) ("[T]he Court is sympathetic to Defendants' frustration with Plaintiff's protracted failure to identify its own purported trade secrets in a manner sufficient to allow discovery to proceed… While the Court will allow Plaintiff to serve a second amended trade secret disclosure within seven (7) days of the date of this Order, the Court hereby puts Plaintiff on notice that this is its final opportunity to amend its trade secret designations with particularity.").

## D.     CBS's Conversion and Unfair Competition Claims Do Not Provide A Means To Circumvent the Trade Secret Disclosure Requirements.

Seemingly recognizing that its Section 2019.210 disclosure was defective, CBS tries to escape the strictures of that statute and obtain discovery on its conversion and unfair competition claims.  This is improper because the bar on discovery not only applies to the trade secret misappropriation cause of action, but also to every cause of

---

[9] CBS's claim that it has "simply provide[d] additional details on the very same trade secrets CBS has asserted since the filing of its complaint" is simply false. Numerous alleged trade secrets appear to have been dropped (e.g., there is no longer any mention of internet streaming, night vision, rehearsals, or challenges in the May 31 letter) and numerous others have been added (e.g., there is nothing in about quad splits and 9-splits or the use of "evergreen" segments in the Complaint). *Compare* Complaint ¶ 64 *with* Exhibit 7 (May 31, 2012 letter).

action that is "factually dependent" on the misappropriation allegation, including, e.g., CBS's allegation of unfair competition.  *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 834-35 (2005).

Furthermore, those claims are preempted.  Under the California Uniform Trade Secret Act ("CUTSA"), common law causes of action that are based on the same nucleus of facts as a misappropriation of trade secret claim are preempted.  *See, e.g., K. C. Multimedia, Inc.* v. *Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (claims for breach of confidence, interference with contract, and unfair competition preempted).  This is, in part, to avoid just what CBS is trying to do here – provide an inadequate Section 2019.210 disclosure and then try to get discovery on the trade secret claims through back-door common law claims that do not come with the strenuous identification requirements as a trade secret claim.  Defendants will file a motion to dismiss the conversion and unfair competition claims as preempted.  Until then, expedited discovery based on preempted claims is improper.

**E.     The Expedited Requests Are Extremely Overbroad and Burdensome.**

In considering whether there is a basis for expedited discovery, the Court should consider the breadth of the requests and the burden imposed.  In *Facebook*, *Inc. v. Various, Inc.*, where the court denied the motion for expedited discovery, the court found that the requests were "so broad as to be implausibly tailored for the sole purposes of . . . crafting a motion for preliminary injunction.  2011 WL 2437433, at *3 (N.D. Cal. June 17, 2011).  Similarly, in *Semitool Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002), the court denied expedited third party discovery because "Plaintiff has not made any showing how this additional discovery is likely to materially change its patent claims assessment."  *Id.* at 277.

The overbreadth of the requests is best illustrated by what Defendants have already produced through expedited discovery.  Defendants have already produced documents that reflect the most recent format for the show, as well as its technical set up and processes.  Specifically, Defendants have produced episode outlines,

descriptions of the three approved competitions for the first three episodes, pictures of the house, draft house rules, flow chart for how the rules will work, a blueprint for the house including all its camera placements, drawings of the master control room with equipment placement, a list of the specific equipment in the master control room, and a powerpoint outlining the post production workflow. *See* Luedtke Decl. ¶ 2. Defendants provided a comprehensive document production on an expedited basis, and they did so during an intense period for the show in its final preparations for premiere.

CBS, not satisfied, moves for the production here of <u>additional</u> documents on an expedited basis. It seeks documents relating to *Big Brother* (Request No. 1), outdated documents related to the form and content of *The Glass House* (Request No. 2), and outdated documents related to the technical set-up of *The Glass House* (Request No. 3). It is unclear how documents showing older versions of the form, content, or technical set-up of *The Glass House* could be required to be expedited, but it does seem clear that these requests are overbroad.

CBS's expedited requests are also unduly burdensome. To begin, CBS's efforts to create ongoing litigation fire drills and require enormously burdensome discovery right as *The Glass House* personnel are focused on getting the new show on the air appears to be a transparent effort by a competitor to thwart the development of the show and distract personnel with an unnecessary litigation side-show. This adds to the burden created by the requests, which is significant.

The requests seek documents from everyone working on *The Glass House*. As of June 7, 2012, there are more than 145 people employed by Keep Calm & Carry On Productions working on *The Glass House*. *See* Declaration of Timothy Bock In Support of Joint Stipulation ("Bock Decl.") ¶ 5. To collect all of their documents, and then run searches on those documents, would be unduly burdensome. Despite CBS's insinuation, these documents have not already been collected and production of the documents would not merely involve the "click of a mouse." Defendants estimate that collection, review and production of all documents responsive to Request No. 2

(documents relating to form and content of *The Glass House*) and Request No. 3 (documents relating to the technical set-up and design of *The Glass House*) would take at least 2-4 weeks to just collect the documents in an expedited manner.  Declaration of Jason Ray ("Ray Decl.") ¶ 16.  The time is intensified by the fact that most Keep Calm employees use their personal laptops and personal emails for work on *The Glass House* creating particular document collection challenges.  *See id.* at ¶¶ 9-15.  Then, after the 2-4 weeks for collection, depending on the volume of documents collected, it could take several more weeks of expedited review to screen for responsiveness, confidentiality, and privilege.

In the end, CBS asks this Court to do what no other Court has done.  CBS does not cite to a single case that asks a litigant to prepare substantial document production responses in a few days in response to sweeping requests for "all documents" concerning broad topics and including multiple custodians.  In fact, the case previously relied upon by CBS states the opposite.  In *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-cv-01846, 2011 WL 1938154 (N.D. Cal. May 18, 2011), the court noted that the parties had been talking about the requested materials for more than a year, the responding party had the specific discovery requests at issue for almost a month, and the expedited discovery ultimately ordered was limited to production of the latest iteration of the allegedly infringing product and product packaging.  *Id.* at *2, *4. There was no production of "all emails relating to the Samsung product."  Instead, the court in *Apple* ordered that a representative sample of the allegedly infringing product be produced.  This is just what Defendants already did here.

**F.    CBS's Effort To Raise Its Privilege Dispute Is Procedurally Improper.**

CBS's insertion of an entirely new discovery dispute in this Joint Statement is procedurally improper and a violation of this Court's scheduling order.  ABC's counsel instructed Mr. Rosen during his deposition not to answer certain questions that went to the substance of attorney-client privileged communications.  Defendants' response to a motion to compel answers to those questions requires us to describe the nature of the

privileged communication "in a manner that, without revealing information itself
privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ.
Proc. 26(b)(5)(a)(ii).  ABC needs time to prepare its submissions for the Court to make
this showing, and asks that this be allowed through the normally-scheduled Joint
Stipulation process.

The inclusion of the privilege dispute in this Joint Stipulation is procedurally
improper for a variety of reasons.  First, this Joint Stipulation is being heard on an
expedited one-week schedule pursuant to the Court's June 5, 2012 Order.  In making
that Order, the Court chose between two alternative schedules for the resolution of the
dispute over Request for Production Nos. 1-4 that were at issue in CBS's May 31,
2012 *ex parte* motion.  Those are the only disputes that have been ordered briefed on a
shortened schedule.  It is entirely improper for CBS to unilaterally insert a *new*
discovery dispute into this fast-track schedule without the agreement of Defendants or
the Court.

Second, CBS inserted the privilege dispute in this Joint Stipulation *without
meeting and conferring* with Defendants pursuant to the Local Rules.  *See* L.R. 37-1
("Prior to the filing of any motion relating to discovery pursuant to [Fed. Rules Civ. P.]
26-37, counsel for the parties shall confer in a good faith effort to eliminate the
necessity for hearing the motion or to eliminate as many of the disputes as possible.").
The deposition took place on Sunday June 3, 2012.  At the deposition, counsel for CBS
indicated that the dispute over the privilege objection would be the subject of a meet
and confer.  On June 4, 2012, counsel for CBS and ABC had a conversation about
other matters, and in that conversation CBS's counsel indicated that it would be
pursuing the privilege dispute.  There was no meet and confer, or effort to meet and
confer, at that time.  On June 5, 2012, a few minutes after noon, counsel for CBS asked
if counsel for ABC could meet and confer in 30 minutes or in an hour and a half.  *See*
Luedtke Decl. ¶¶ 6-8, Ex. 2.  ABC's counsel responded that she could not do those
times, but she could do 10:00 a.m. the next morning.  *See id.*  CBS's counsel said that

1   it intended to put the dispute in the Joint Statement, ABC's counsel said that would be

2   improper, CBS's counsel suggested that it would leave blanks in the Joint Stipulation

3   to insert after June 5, ABC's counsel objected as this would further shorten the Joint

4   Stipulation process for ABC, and nevertheless, CBS went ahead and included the new

5   issue in the Joint Stipulation.  *See id.*

6        Third, after receiving their Joint Stipulation, ABC has offered to compromise on

7   the privilege dispute.  Specifically, ABC has offered to give CBS a verified written

8   interrogatory from Mr. Rosen providing (a) the date on which Mr. Freidman

9   transmitted the typed up House Guest Manual to ABC in-house counsel Ms. Icken, and

10  (b) how Mr. Rosen used the manual, if at all, on *The Glass House*.  *See* Luedtke Decl.

11  Ex. 3.  These are questions that CBS's counsel did not ask at the deposition.  This is

12  exactly the type of communications and discussions CBS should have engaged in prior

13  to improperly inserting this dispute into the Joint Stipulation that was to be limited to

14  Requests Nos. 1-4.

15        What ABC will not agree to do is provide the substance of attorney-client

16  communications between in-house counsel Ms. Icken and Mr. Rosen, nor will ABC

17  allow Mr. Rosen to answer a question about the date of a communication that, if

18  answered, would necessarily reveal the substance of the communication.  *See*

19  *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 208

20  F.3d 1142, 1147-48 (9th Cir. 2005) (parties must "provide sufficient information to

21  enable other parties to evaluate the applicability of the claimed privilege or protection"

22  "without revealing information itself protected or privileged.") (quoting Rule 26(b)(5)).

23  *Cf. Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992)

24  ("[C]orrespondence, bills, ledgers, statements, and time records which also reveal the

25  motive of the client in seeking representation, litigation strategy, or the specific nature

26  of the services provided, such as researching particular areas of law, fall within the

27  privilege.").

28

**G.    CBS's Spoliation Allegations Do Not Justify Expedited Discovery.**

CBS argues that expedited discovery is necessary because Mr. Rosen is deleting *The Glass House* emails.  This is not true, and not a basis for expedited discovery.  First, Mr. Rosen understands his obligation to retain all documents and he will abide by it.  *See* Luedtke Decl. Ex. 2 (Declaration of Kenny Rosen ¶ 56).  Second, CBS's effort to overstate Mr. Rosen's testimony must fail.  Mr. Rosen did delete some emails in May that he received that were non-substantive.  *See id.* ¶ 52.  Third, FTI Consulting, a forensics firm, has made a full preservation copy of Mr. Rosen's laptop, email, and cell phone (for text messages) on May 14, 2012 and June 5, 2012.  *See* Rosen Decl. ¶ 51; Luedtke Decl. Ex. 9 (Benjamin Hodges Decl. ¶¶ 5-8.   Thus, the evidence is preserved and there is no basis for expedited discovery.

## IV.    CBS'S DOCUMENT REQUESTS, PROPOSED SCHEDULE, AND STATEMENT ON PRIVILEGE ISSUES

**A.    Request 1:  Documents Concerning *Big Brother* And Relating To Specified Aspects Of The Production Of *Glass House***

Request 1 requests the following:

> All DOCUMENTS from January 1, 2008 to present in the possession, custody, or control of Defendants American Broadcasting Companies, Inc., ABC, INC., Keep Calm and Carry On Productions, Inc., Corie Henson, Michael O'Sullivan, or Kenny Rosen, including but not limited to emails, text messages, instant messages, and communications on Facebook, Twitter, or other social media sites, CONCERNING BIG BROTHER and created in the context of or RELATING TO the development, pre-production, or production of GLASS HOUSE.

**1.    CBS's Statement:  Request No. 1 is Narrowly Tailored and Concerns Documents Obviously Relevant to this Lawsuit**

CBS has continually narrowed Request No. 1, and now there can be no dispute that it concerns documents obviously relevant to this lawsuit and is narrowly tailored.  CBS has narrowed Request 1 by date (it now applies only to the timeframe that Rosen identified for the development period of *Glass House*), by entity (it now includes only

the entities that CBS believes are directly involved in the development or production of *Glass House*) and by subject matter (it now seeks *Big Brother* documents only insomuch as they relate to specified aspects of *Glass House*—namely, its "development, pre-production, production"). And for the reasons explained above in Part II.A, the material sought here—which will reveal the extent to which Defendants improperly stole from *Big Brother* in developing *Glass House*—is relevant to *all* of CBS's claims (not just copyright and trade secrets).

Additionally, the material is relevant to CBS's copyright claim. Defendants have resisted discovery flatly claiming that "intent to copy" is entirely irrelevant. Dkt. 24 at 14. They are wrong. In a copyright case, a plaintiff demonstrates copying by showing (1) substantial similarity <u>and</u> (2) access to plaintiff's copyrighted work.[10] *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). Courts have consistently held that intent to copy—and for that matter, *actual* copying—are probative of access.[11] *See, e.g.*, *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 17 (9th Cir. 1933) ("In considering the weight of the circumstantial evidence of copying derived from an analysis of similarities between the play and the story, the question of intent to copy is an important factor . . . ."); *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*, 642 F. Supp. 1031, 1033 (N.D. Ga. 1986) ("Since there is seldom direct evidence of copying, the plaintiff generally proves [copying] by showing that the [defendant] had access to the copyrighted work," but "in this case there is substantial evidence of *direct intentional copying sufficient to carrying plaintiff's burden*.") (emphasis added); *Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F. Supp. 980, 999-1000

---

[10] Although Defendants concede that they had access to *Big Brother*, the extent to which they had heightened or specialized access to *Big Brother*'s creative expression (including, for instance, their intimate knowledge of *Big Brother* and their attempts to copy *Big Brother* on *Glass House*) will affect CBS's burden to show that the shows are substantially similar.

[11] To this point, Defendants have cited only cases purportedly claiming that "'intent to copy' is irrelevant to Plaintiffs' burden of proving substantial similarity" (Dkt. 24 at 14), which of course ignores the separate element of access.

(D. Ariz. 1992) ("Proof of access is [] supported by evidence of [the defendant's]
intent to copy."). In addition, evidence of intent to copy is relevant to whether
Defendants' infringement is willful or malicious.

Here, as Rosen's deposition testimony and the *Glass House* instructional
materials amply illustrate, the evidence of intent to copy can be revealed by earlier
communications discussing *Big Brother* or prior *Glass House* draft materials
referencing *Big Brother*. Indeed, Mr. Rosen admitted that he had *Glass House* staff
"type up" the *Big Brother* HouseGuest manual (Ex. M to June 4, 2012 Declaration of
Theane Evangelis Kapur at 84) and that he referenced the *Big Brother* Master Control
Room schedule for use on *Glass House*. (*Id.* at 80-81.) Those admissions alone
demonstrate that individuals on *Glass House* were actively copying *Big Brother*. Mr.
Rosen further testified to viewing past *Big Brother* episodes for a two-day period in
March, not to copy *Big Brother*, but for the unbelievable purpose "[t]o remind myself
of what a great producer I am" and "ego gratification." (*Id.* at 114.) Given the overt
copying of *Big Brother*, it should come as no surprise that Mr. Rosen also testified
extensively about the common elements and substantial similarities of *Big Brother* and
*Glass House* while straining to identify only minute, insignificant differences between
the shows (Mr. Rosen testified, for example, that *Glass House* has a Jacuzzi instead of
a pool and, that although *Big Brother* competitions take place outdoors, *Glass House*
competitions take place on an indoor stage decorated to look as if it is outdoors). (*Id.*
at 150-223; Kapur Decl. Exh A [GH000115-16].) Indeed, Mr. Rosen even conceded
that *Glass House* is more similar to *Big Brother* than to the *Hunger Games*—the work
upon which he says *Glass House* is based. (Ex. M to June 4, 2012 Declaration of
Theane Evangelis Kapur at 20-21, 285-86.) The materials sought in this request will
shed light on any additional efforts to copy *Big Brother*. And of course, the materials
sought in this request can reveal theft relevant to CBS's claims beyond just copyright.

Attempts to Compromise: Although Rule 26 would entitle CBS to all
documents in Defendants' possession relating to *Big Brother* or relating to various

aspects of *Glass House*'s production, CBS has repeatedly narrowed Request 1, at Defendants' insistence, to make it as least burdensome as possible.  Upon meeting and conferring, CBS informed Defendants that CBS would further narrow Request 1 by date, by entity, and by subject matter, as explained above.  CBS suggested that Defendants begin producing documents responsive to this request along with Defendants reserving the right to challenge the adequacy of CBS's trade secret designations at a later date.  Defendants declined.  (*See* Decl. of Theane Evangelis Kapur in Supp. of Jt. Stip. ¶ 2.)

### 2.   Defendants' Response

*First,* the law bars CBS from taking trade secret discovery until it has made an adequate Section 2019.210 disclosure.  For the reasons discussed above, CBS has not yet come close to doing so, and some doubt now exists about whether CBS *can* do so.  Until CBS properly discloses its trade secrets pursuant to governing law, CBS has no power to take the discovery described in Request No. 1 concerning its trade secrets or related claims.

*Second,* CBS cannot justify the broad and extraordinarily expedited discovery it seeks based on its copyright claim.  As discussed above, a search for documents responsive to CBS's Request No. 1 would require ABC and Keep Calm to search the files of the more than 150 people who work on the *Glass House* and isolate documents mentioning or related to *Big Brother*.  *See* Bock Decl. ¶ 5; Ray Decl. ¶ 16.  This is a massive and enormously expensive undertaking that Defendants could not possibly accomplish in anything approaching 48 hours.  *See id.*

CBS nevertheless argues that the Court should force Defendants to shoulder this burden because Request No. 1 bears on Defendants' "intent to copy."  CBS says that "[i]n a copyright case, a plaintiff demonstrates copying by showing (1) substantial similarity *and* (2) access to plaintiff's copyrighted work."  Stip. at 32:17-18.  CBS then insists that courts have held that "intent to copy . . .[is] probative of access."  *Id.* at

32:20-21.[12]

Taking CBS at its word, while it is in some academic sense true that an intent to copy is relevant to access, since the desire to copy material tends to make it more likely one obtained access to the material, it would be difficult to invent a scenario in which the question of access is less in dispute that it is here. *Big Brother* has been on the air for 13 years. Everyone in America with a TV has total access to its creative expression. Several executives at *Glass House* once worked on *Big Brother*. Mr. Rosen testified he recently watched some episodes of *Big Brother* that he produced. Even if CBS tomorrow obtained incontrovertible evidence of intent to copy, that would not provide *more* evidence of access beyond that which CBS has right now. Nor would such evidence relieve CBS of its obligation to demonstrate substantial similarity. *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007) ("[e]ven if a defendant concedes use of a plaintiff's work, the copyright claim still fails absent substantial similarity;" citing cases). Although CBS argues that proof of heightened access reduces their burden to show substantial similarity, Defendants are aware of no authority holding that intent to copy reduces CBS's substantial similarity burden. In short, discovery of Defendants' supposed intent to copy is of such marginal utility for demonstrating infringement here that it cannot possibly justify the extraordinarily expedited and burdensome discovery CBS proposes.

<u>Attempts to Compromise</u>: Defendants have suggested that CBS can and should modify its Section 2019.210 disclosure to state trade secrets with particularity. CBS has declined. Moreover, Defendants offered a deposition of show-runner Mr. Rosen on June 3, and that deposition proceeded for 7 hours. During that deposition, CBS asked him whether he referenced *Big Brother* while working on *The Glass House*.

---

[12] Although in its enthusiasm CBS claims "[c]ourts have consistently held that intent to copy . . . [is] probative of access," only one Ninth Circuit court in the modern era has so stated in passing. *Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F. Supp. 980, 999-1000 (D. Ariz. 1992). Indeed, far more notable is the general absence of any such rule in the thousands of reported copyright cases from the Ninth Circuit.

101301082_4 (JT. STIP. REGARDING ADDITIONAL DISCOVERY) (2).DOC

**B.    Request 2:  Certain Categories Of Documents Reflecting Specified Aspects Of The Format, Content, and Production Methods Of *Glass House***

Request 2 requests the following:

All series bibles, series and episode outlines, dailies, story training manuals, master control room manuals, competition pitches, competition outlines, format pitches, format outlines, and other DOCUMENTS REFLECTING the format, content, production methods, story-producing methods, or filming methods for GLASS HOUSE.

**1.    CBS's Statement:  Request No. 2 Goes to Materials Relevant to Defendants' Theft of *Big Brother***

In addition to Request 1 (which seeks documents "concerning *Big Brother*"), Request 2 seeks further documents that allow for CBS to see the extent to which *Glass House*'s format, content, and production methods have improperly stolen from *Big Brother*.  As illustrated by Rosen's admission that he had *Big Brother*'s manual copied along with a comparison of the *Glass House* instructional materials themselves (*see* Part II.A), internal *Glass House* materials may well have purged references to *Big Brother* yet have obviously copied from them.  CBS is entitled to materials—here, series bibles, master control room manuals, outlines, for example—that go to the heart of CBS's trade secret claims, particularly since Rosen himself testified that he showed *Big Brother*'s master control room schedule to a *Glass House* producer and consulted *Big Brother*'s schedule "to figure out how many story positions I would need to hi[re]."  (Ex. M to June 4, 2012 Decl. of Theane Evangelis Kapur at 80-84.)

Moreover, the materials going to the format and filming methods of *Glass House* obviously pertain to the "look and feel" of the show, which is undoubtedly relevant for CBS's copyright claim.  And earlier drafts of these materials are likely to reveal direct copying of *Big Brother* that will help establish CBS's copyright claim.

Defendants have already produced a subset of these materials, but they have refused to produce prior draft materials—again based on their contention that previous draft materials are supposedly irrelevant to CBS's copyright claim, which, as explained

1   above in Part IV.A.1,  ignores CBS's other claims.

2        Attempts to Compromise:  CBS narrowed this request, which originally sought

3   all documents related to Glass House.  CBS met and conferred with Defendants over

4   this request and suggested that Defendants begin producing responsive documents

5   while reserving their right to challenge the adequacy of CBS's trade secret

6   designations at a later date, but Defendants declined.  (*See* Decl. of Theane Evangelis

7   Kapur in Supp. of Jt. Stip. ¶ 2.)

8        **2.    Defendants' Response**

9        Defendants have already produced current documents responsive to Request No.

10  2, and there is no good cause for expedited discovery to compel production of the full,

11  overbroad scope of documents responsive to this request.

12        **a.    What Defendants Have Already Produced**

13        Request No. 2 seeks "All documents reflecting the format, content, production

14  methods, story-producing methods, or filming methods for Glass House."  It gives as

15  examples of responsive documents "series bibles, series and episode outlines, dailies,

16  story training manuals, master control room manuals, competition pitches, competition

17  outlines, format pitches, format outlines, and other documents."

18        Defendants have produced to CBS the most up-to-date series and episode

19  outlines, specifications for the master control room, approved competition outlines and

20  rules, contestant manuals, and contestant rules.  *See* Luedtke Decl. ¶¶ 2-4.   Mr. Rosen

21  testified that there is no "series bible" for the show so there is nothing to produce there.

22  *See* Kapur Decl. Ex. M at 230:13-14.  Defendants also produced Kenny Rosen for a

23  seven hour expedited deposition on June 3, 2012, during which he testified about *The*

24  *Glass House* and described its format, content, production methods, or story-producing

25  methods.

26        **b.    What Defendants Have Not Produced, and Should Not Be**

27              **Required To Produce, in Expedited Discovery**

28        This is an extraordinarily broad discovery request.  CBS claims above that it

"narrowed this request, which originally sought all documents related to Glass House." It is unclear how Request No. 2 has been narrowed.  It still seeks <u>all</u> documents "reflecting the format, content, production methods, story-producing methods, or filming methods for Glass House."  It is a television show.  People working on the television show will be talking about the content of the show, how it is going to be produced, etc. during every hour of every day.  It is unclear what documents between and among persons working on *The Glass House* would not reflect the format, content, production methods, story-producing methods, or filming methods of the show.  Thus, Request No. 2 has not been narrowed at all and remains unjustifiably overbroad, particularly for expedited discovery.

It would be unduly burdensome for Defendants to collect, review, and produce all documents reflecting the "format, content, production methods, story-producing methods, and filming methods" of the show.  As set forth above and in the Declarations of Timothy Bock and Jason Ray, it would be a massive undertaking for ABC and Keep Calm to identify all documents responsive to Request No. 2.  More than 145 people are employed by Keep Calm to work on *The Glass House*.  *See* Bock Decl. ¶ 5.  These employees use their personal computers and personal email for their work on *The Glass House*.  *See* Bock Decl. ¶ 3.  Therefore, any effort to collect their documents and email will be particularly sensitive and time-consuming because those documents will be intermingled with personal documents and perhaps documents from other jobs for other reality shows, all on a computer that is not in the possession, custody, or control of ABC or Keep Calm.  *See* Ray Decl. ¶ 9-10.  None of these materials for the more than 145 Keep Calm employees exist on a centralized server or system that allows for easy and efficient collection.  Collection and production of these documents would not be as easy as a "click of the mouse" as CBS contended at the June 1 telephonic hearing with the Court.  In addition, it is estimated that dozens of people employed by ABC work on *The Glass House* in some capacity, in addition to other shows.  *See* Bock Decl. ¶ 4-5.  Therefore, to respond to Request No. 2 as part of

expedited discovery, Defendants would have to evaluate whether more than 150 people had responsive documents, consider whether those documents are in Defendants' possession, custody, and control, and devise a plan to collect, review, and produce all documents about the format, content, and processes of the show – all before the parties have engaged in a Rule 26(f) conference and before the Court has entered any case management order in this still nascent matter.

If this Court did order ABC and Keep Calm to respond to Request No. 2, which it should not, Keep Calm estimates that it would take at least 14-28 days to interview and collect documents from the more than 70 potential custodians to evaluate what documents they have that reflect the format, content, and processes of the show.   Ray Decl. ¶ 16.  This will be particularly burdensome to do at this stage because *The Glass House* is now in production and its employees are working literally around the clock on a show that is recorded 24-hours-a-day. Bock Decl. ¶ 6.  Of course, this is only the time it would take to collect the documents; review and production of such an overbroad collection of documents would necessarily take additional weeks of attorney time.

In sum, CBS's request that Defendants not limit their production to current versions of the requested documents but instead produce <u>all</u> documents "reflecting" Glass House's format, content, and production is vastly overbroad and impossible to justify even under normal discovery.  Here, where discovery is expedited and where it is unclear what the good cause is to warrant such an extraordinarily broad request, it should be denied.  CBS should not be allowed to turn Defendants upside down during the busy production period for a show that will only last ten weeks.

In addition to the problem of burden, Request No. 2 seeks information that is not reasonably related in any way to CBS's copyright claim, as set forth above.  It is inconceivable how correspondence between two *The Glass House* employees about their production processes, or about what two contestants said to each other in the Jacuzzi, could conceivably be relevant to a copyright claim.  As noted previously,

although CBS suggests that perhaps such communications might be relevant to the "look and feel" of *The Glass House,* the show will premiere on ABC on June 18. That will be the best evidence of the look and feel of *The Glass House* and requires neither party to undertake an impossible effort to collect and produce documents of the most marginal relevance conceivable in 48 hours.

Next, the trade secret cause of action cannot provide the justification for the fishing expedition that is Request No. 2. As set forth above, CBS still has not provided an adequate Section 2019.210 disclosure. Until that is provided, there can be no discovery justified by the trade secret claim.

Even if the Section 2019.210 disclosure were adequate (which it is not), the breadth of Request No. 2 goes far beyond discovery on any purported trade secrets. CBS must tailor its trade secret discovery to the trade secrets identified, not ask about all documents reflecting anything about the production processes of the show. If there are particular production processes that CBS thinks are a trade secret and that are disclosed with reasonable particularity in a Section 2019.210 disclosure (so far, there are not), then CBS should serve reasonably tailored requests that inquire about those specific production processes. CBS has not done so. Instead, CBS has cast a wide net in a fishing expedition to see if it can find something to call a trade secret. This is exactly what the law forbids.

Finally, Request No. 2 cannot be supported by CBS's conversion and unfair competition causes of action. As described above, those are preempted by the California Uniform Trade Secret Act. CBS cannot use trade secret claims disguised as other causes of action to escape the strictures of Section 2019.210.

<u>Attempts to Compromise</u>: Defendants offered to produce the most recent documents reflecting the form, content, and production processes of *The Glass House*, and indeed produced that material on June 1, 2012. Defendants also offered a deposition of show-runner Mr. Rosen on June 3, and that deposition proceeded for 7 hours.

**C.    Request 3:  Documents Related To Design Of The House On *Glass House***

Request 3 requests the following:

> All DOCUMENTS, including but not limited to blueprints, renderings, plans, drawings, and design specifications, that RELATE TO the art direction, technical set-up, or design of the house featured on GLASS HOUSE.

**1.    CBS's Statement:  The Documents Relating to the Design of the House on *Glass House* Are Relevant**

In Rosen's deposition, he admitted that the house on *Glass House* had already been created and that there was footage and pictures of the house, which Defendants only recently produced late on June 5, 2012 (the day CBS had to submit its portion of this Joint Stipulation).  (*See* Ex. M to June 4, 2012 Decl. of Theane Evangelis Kapur at 73, 137; *see also* Decl. of Theane Evangelis Kapur in Supp. of Jt. Stip. ¶ 3.)  Any remaining documents reflecting design of the house are undoubtedly important.  The art direction and design of the house go to the "look and feel" of the show, which is unquestionably pertinent to CBS's copyright claim.  And the technical set-up of the house goes to trade secrets.  (And of course, to the extent the documents sought here reflect other theft of *Big Brother*, that is relevant to CBS's conversion and unfair competition claims.)

Attempts to Compromise:  CBS met and conferred with Defendants over this request and suggested that Defendants begin producing responsive documents while reserving their right to challenge the adequacy of CBS's trade secret designations at a later date, but Defendants declined.  (*See* Decl. of Theane Evangelis Kapur in Supp. of Jt. Stip. ¶ 2.)

**2.    Defendants' Response**

Defendants have already produced current documents responsive to Request No. 3, and there is no good cause in expedited discovery to compel production of the full, overbroad scope of documents responsive to this request.

**a.    What Defendants Have Already Produced**

Request No. 3 seeks "All documents that relate to the art direction, technical set-up, or design of the house featured on Glass House.  As examples CBS requests "blueprints, renderings, plans, drawings, and design specifications."

Defendants have produced to CBS the blueprint for the house, a blueprint showing all camera positions, 3D renderings of the house when it was being designed, photographs of the house, and specifications for the master control room.  *See* Luedtke Decl. ¶ 2.

### b.   What Defendants Have Not Produced, and Should Not Be Required To Produce, in Expedited Discovery

This, too, is a broad discovery request, and it is difficult to conceive how there could be any good cause to compel the production of *all* documents responsive to Request No. 3 in expedited discovery.  For the reasons set forth above, this discovery is irrelevant to the copyright claim, and should not be allowed to proceed on the trade secret claim until there is an adequate Section 2019.210 disclosure, if at all.  It would be unduly burdensome and overbroad as part of expedited discovery to require Defendants to produce correspondence and outdated versions of blueprints and design documents related to the show.

Attempt to Compromise:  Defendants offered to produce, and did produce, the most recent documents reflecting the blueprints, camera placement, master control room set up, and equipment ordered for *The Glass House*.  Defendants also offered a deposition of show-runner Mr. Rosen on June 3, and that deposition proceeded for 7 hours.

### D.   Request 4:  Documents Reflecting The Most Recent Version Of Any Episode Of *Glass House*

Request 4 requests the following:

> All DOCUMENTS REFLECTING the latest and most recent version of any episode of GLASS HOUSE, regardless of whether the episode is in a pre-broadcast version that is not final.

1. **CBS's Statement:  Documents Reflecting the "Most Recent Version" of *Glass House* Episodes Are Undoubtedly Relevant to CBS's Claims**

Defendants have continually protested that *Glass House* has not yet been broadcast, but with the air date quickly approaching, *Glass House* will undoubtedly start shooting episodes (either for broadcast or as "test episodes").  Indeed, Mr. Rosen testified at his deposition that online content will commence when the contestants move in on June 11, 2012, that *Glass House* will stream live to the internet on June 12 and 14, 2012, and that *Glass House*'s rehearsal week will begin imminently.  (Ex. M to June 4, 2012 Declaration of Theane Evangelis Kapur at 139-41, 105-07.)  *Glass House* episodes (even if not ultimately broadcast) are relevant to comparing the "look and feel" of *Glass House* and *Big Brother* as well as showing any intent to copy and whether Defendants' infringement is willful or malicious.

Attempts to Compromise:  CBS met and conferred with Defendants over this request and suggested that Defendants begin producing responsive documents while reserving their right to challenge the adequacy of CBS's trade secret designations at a later date, but Defendants declined.  Defendants have informed CBS that they do not yet have documents responsive to this request.  (*See* Decl. of Theane Evangelis Kapur in Supp. of Jt. Stip. ¶ 2.)

2. **Defendants' Response**

As Defendants have explained to CBS, no episode of *The Glass House* has been created yet.  Therefore, there is nothing to produce.  In any event, when there is an episode prior to 10:00 p.m. on June 18, 2012 when it is scheduled to air, it would be extraordinary to require ABC to produce an advance copy of its new television programming to a rival network prior to airing it to the public.  Defendants object vehemently to giving CBS this "sneak peek" into ABC's primetime programming.  Although CBS broadcasts *Big Brother,* it is not itself Big Brother*,* and CBS's apparent desire to vet ABC's programming for content of which it does not approve implicates the prohibition on prior restraint embedded in the First Amendment.  *See Goldblum v.*

*Nat'l Broadcasting Corp.,* 584 F. 2d 904, 906-07 (9th Cir. 1978).  Once the episode airs on June 18, CBS has access to that broadcast and there is no need for discovery of what aired.

Moreover, there will be live streaming to the internet for an hour June 12, June 13, and June 14.  That stream is accessible to CBS through ABC's web site.  It cannot be produced in advance because it is live.

In the meantime, as explained above, Defendants have produced episode outlines and summaries of the approved competitions for *The Glass House*.  *See* Luedtke Decl. ¶ 2.  At this point, there is nothing else to produce.

<u>Attempt to Compromise</u>:  Defendants agreed to produce, and did produce, episode outlines and competition descriptions prior to the show being broadcast. Defendants also offered a deposition of show-runner Mr. Rosen on June 3, and that deposition proceeded for 7 hours.

**E.    CBS's Proposed Schedule**

CBS requests that Defendants produce documents responsive to CBS's requests <u>within 48 hours of an order from this Court compelling production</u>.

**1.    CBS's Statement:  CBS's Proposed Schedule is Reasonable in Light of *Glass House*'s Airing and Rosen's Spoliation of Documents**

CBS's proposed schedule is reasonable.  By the time this Court is able to issue an Order (some time after June 15, according to this Court's June 5 order, Dkt. 35), *Glass House* will be set to air in a matter of days.

Production on the timeframe CBS proposes is not unduly burdensome.  ABC is a sophisticated party and already has gathered responsive documents.  (*See, e.g.*, Ex. M to June 4, 2012 Declaration of Theane Evangelis Kapur at 30 [acknowledging that emails were preserved with forensic consultants].)  Defendants have known of their preservation obligations since early May (when CBS sent them cease-and-desist letters).  And indeed, when this Court ordered production of certain documents on June 1, 2012, ABC produced documents in just over two hours.  (*See* June 4, 2012

1  Declaration of Theane Evangelis Kapur ¶ 2.)

2      Expedited production is also warranted in light of Defendant Kenny Rosen's

3  admission that "my practice is to delete e-mails that I don't need" and that he has

4  continued to delete e-mails relating to *Glass House* after this lawsuit was filed.  (Ex. M

5  to June 4, 2012 Kapur Declaration at 28, 40-41.)

6      **2.    Defendants' Response**

7      Production of additional documents responsive to Request Nos. 1-4 is not

8  warranted.  If this Court does order such a production, a 48 hour turnaround would be

9  impossible.  *See* Bock Decl. ¶ 6; Ray Decl. ¶ 16.  CBS's purported reasons for this

10 impractical schedule have no merit.

11     First, CBS argues that ABC has already gathered responsive documents.  This is

12 incorrect.  ABC has not gathered responsive documents to the overbroad Request Nos.

13 1-3 that could implicate documents in more than 150 custodians' possession.  The

14 parties have not even had a Rule 26(f) conference about the scope of discovery and

15 form of production.  CBS cites Mr. Rosen's deposition in which counsel said that

16 emails were preserved with forensic consultants.  It is true that Mr. Rosen's emails

17 (and the emails of the other two individual defendants) were preserved with forensic

18 consultants.  *See generally* Luedtke Decl. Ex. 9 (Hodges Decl. ¶¶ 5-8).   Request Nos.

19 1-3 are not limited to those custodians and CBS offered no such limitation.

20     Second, the fact that Defendants are aware of their preservation obligations does

21 not mean that documents have been collected electronically and stand poised for

22 review and production.

23     Third, it is misleading to suggest that because Defendants promptly produced

24 the current documents reflecting *The Glass House* after the June 1, 2012 hearing , they

25 can also produce the massive range of documents responsive to Request Nos. 1-3 just

26 as promptly.  This ignores the fact that Defendants had been offering *for weeks* to give

27 CBS the documents reflecting the current state of the show.  After the Court's order

28 and in light of the June 3 deposition, Defendants worked expeditiously to get them

numbered and produced.  That this was accomplished quickly is irrelevant to the
burden of producing documents in response to the entirety of Request Nos. 1-4, to
which Defendants have objected from the beginning.

Fourth, there is no evidence preservation justification for the hurried schedule
CBS proposes.  Mr. Rosen did delete some emails tangentially related to *The Glass
House* after the litigation began, but those were emails he received and were non-
substantive.  *See* Luedtke Decl. Ex. 2 (Rosen Decl. ¶ 53).  Moreover, there is no need
for expedited discovery to preserve his emails because immediately after the litigation
began, a forensic firm, FTI, was retained and it forensically imaged all of Mr. Rosen's
emails (as well as his laptop and cell phone) on May 14, 2012 and again on June 5,
2012.  *See* Luedtke Decl. Ex. 9 (Hodges Dec. ¶¶ 5-8).  Thus, any discoverable
materials that exist have been preserved by a third party and can be searched and
reviewed for appropriately tailored discovery requests at the appropriate time.
Moreover, Mr. Rosen understands his preservation obligations going forward.  *See*
Luedtke Decl. Ex. 2 (Rosen Decl. ¶ 56).

**F.   Privilege Issues Regarding Instructions to Kenny Rosen Not to Answer
Deposition Questions Concerning Having *Big Brother*'s Manuals Typed Up
and Distributed to ABC In-House Counsel**

**1.   CBS's Statement**

During the June 3, 2012 deposition of Kenny Rosen, Defendants' counsel made
overbroad and baseless privilege objections, and Defendants' counsel, by instructing
Rosen not to answer, blocked any follow up questioning about Rosen's disclosure of
the *Big Brother* HouseGuest Manual to *Glass House* employee Thomas Friedman or
the reasons why Rosen asked Friedman to "type it up" well before this litigation
commenced.  (Ex. M to June 4, 2012 Declaration of Theane Evangelis Kapur at 84-
95.)  Rosen denied instructing Friedman to "type it up" so it could be transmitted to
ABC's in-house counsel or that he was involved with any decision to send it to in-
house counsel (*id.* at 87), so Mr. Rosen could not possibly have been transmitting the

material for purposes of seeking legal advice.  Nonetheless, Defendants' counsel

instructed Rosen not to answer (i) why he had the manual "typed up" (*id*. at 89, 91-94);

(ii) whether he consulted with counsel before providing the manual to Friedman (*id*. at

91); (iii) the dates of any communications with counsel regarding the manual (*id*. at 89,

91-94); or (iv) what happened to the HouseGuest manual after Rosen asked Friedman

to "type it up."  (*Id*. at 92-93.)[13]

A party may move to compel a deponent to answer questions.  *See* Fed. R. Civ.

P. 37(a)(3)(B).  Once discoverability is demonstrated under Rule 26, "[t]he party who

resists discovery has the burden to show discovery should not be allowed, and has the

burden of clarifying, explaining, and supporting its objections." *Comcast of Los

Angeles, v. Top End Int'l, Inc*., 2003 WL 22251149, at *2 (C.D. Cal. 2005) (citing

*Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  This requires the

"party asserting the privilege to establish *all the elements of the privilege*," . . . and an

assertion of a privilege without evidence to support it will not prevail." *A. Farber &

Partners, Inc. v. Garber*, 234 F.R.D. 186, 192 (C.D. Cal. 2006) (emphasis added).

Here, ABC's counsel blocked all inquiries entirely into foundational questions

that Defendants would have to provide on a privilege log—namely, *when*

conversations with Friedman and ABC's in-house counsel took place and whether any

such conversation took place before Rosen asked Friedman to type up the manual.

Such details are ones CBS would plainly be entitled to; without any indication of when

the conversations happened or even the general subject area, there is no way for CBS

to assess the validity of ABC's invocation of privilege.  *See* Fed. R. Civ. P. 26(b)(5)

(party withholding must "describe the nature of the . . . communications . . . and do so

in a manner that, without revealing information itself privileged or protected, will

---

[13]  Rosen's counsel, Devin McRae, passed a note to Rosen in the middle of the
deposition and refused to disclose the note to CBS.  (Ex. M to June 4, 2012
Declaration of Theane Evangelis Kapur at 161-62.)  CBS asked Mr. McRae to
retain the note.  (*Id*. at 225-26.)

enable other parties to assess the claim").  Indeed, ABC's counsel objected to questions that apparently go to nonprivileged information, such as Friedman's reasons for quitting *Glass House* or Rosen's own personal reasons for asking Friedman to type up the *Big Brother* manuals (and if Rosen was doing so at the direction of counsel—yet CBS cannot even know when any potential conversation happened—then there is no way for CBS to be able to litigate such a privilege issue).  Furthermore, if Rosen asked Friedman to type up the manuals for the purpose of passing them off as *Glass House*'s intellectual property, then under the crime-fraud doctrine, Rosen cannot use ABC's in-house counsel to shield such information.  *See, e.g.*, *United States v. Talao*, 222 F.3d 1133, 1140 (9th Cir. 2000) ("Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out the illegal or fraudulent scheme.").

Accordingly, ABC should provide CBS with answers to certain questions that deponent Kenny Rosen was improperly instructed not to answer at this deposition, including (i) why he had the *Big Brother* HouseGuest manual "typed up"; (ii) whether he consulted with counsel before providing the manual to *Glass House* employee Tom Friedman; (iii) the dates of any communications with counsel regarding the manual; and (iv) what happened to the HouseGuest manual after Rosen asked Friedman to "type it up."  CBS also requests that the Court order that Rosen appear immediately and answer the questions which he was instructed not to answer.

<u>Attempts to Compromise</u>:  CBS attempted to meet and confer with Defendants' counsel regarding this issue on June 5, 2012, but Defendants' counsel were unavailable.  (*See* Decl. of Theane Evangelis Kapur in Supp. of Jt. Stip. ¶ 5.) Defendants declined CBS's offer to update this portion of the stipulation if the issue is negated during meet and confer (*see id.*), so CBS will include the details of any further meet and confer sessions in its supplemental response.

**2.**     **Defendants' Response**

Defendants' position on this is set forth in the Argument section above at Section F.  In sum, CBS's inclusion of this new dispute in this Joint Stipulation is procedurally improper.  This issue was not part of the Court's Order granting a shortened briefing schedule for the discovery disputes raised in CBS's prior *ex parte* application.  Moreover, there was no effort to meet and confer by CBS prior to including this issue in the Joint Stipulation.  If this Court wishes to entertain briefing on this issue, ABC respectfully requests the opportunity to brief the issue following a meet and confer and to make the appropriate submissions regarding the evidentiary dispute.

Attempts to Compromise:  CBS attempted to meet and confer with Defendants hours before it filed this Joint Statement.  *See* Luedtke Decl. ¶ 8.  When defense counsel was not available on such short notice, CBS proceeded to include the dispute in this Joint Statement.  *See id.*  This does not constitute a good faith meet and confer effort.  Nevertheless, after receiving CBS's Joint Statement that set forth, for the first time, the specifics of its dispute over the privilege instruction, Defendants considered that position.  Defendants offered a compromise proposal whereby it would provide a verified written interrogatory from Mr. Rosen that would answer two foundational questions that CBS's counsel did not ask at the deposition.  Namely, Defendants offered to provide written testimony on (a) the date on which Mr. Freidman transmitted the typed up House Guest Manual to ABC in-house counsel Ms. Icken, and (b) how Mr. Rosen used the manual, if at all, on *The Glass House*.  *See* Luedtke Decl. Ex. 3.  The provision of this information should more than satisfy CBS's request for foundational information.  The other information sought by CBS is protected by the attorney-client privilege.

1   Dated:  June 13, 2012

2                                          SCOTT A. EDELMAN
                                           THEANE EVANGELIS KAPUR
3                                          BLAINE H. EVANSON
                                           MICHAEL W. SEITZ
4                                          GIBSON, DUNN & CRUTCHER LLP

5                                          By: _____/s/ Scott A. Edelman_____
6                                                        Scott A. Edelman

7                                          Attorneys for CBS Broadcasting Inc.

8                                          GLENN D. POMERANTZ
                                           JONATHAN E. ALTMAN
9                                          CAROLYN HOECKER LUEDTKE
                                           PETER E. GRATZINGER
10                                         MUNGER, TOLLES & OLSON LLP

11
                                           By: _____/s/ Carolyn Hoecker Luedtke_____
12

13
                                           Attorneys for American Broadcasting
14                                         Companies, Inc., The Walt Disney Company,
15                                         Disney Enterprises, Inc., ABC, Inc., DPA
                                           Disney/ABC Television Group, Keep Calm and
16                                         Carry On Productions, Inc.
17                                         DEVIN A. MCRAE
                                           EARLY SULLIVAN WRIGHT GIZER &
18                                         MCRAE LLP

19                                         By: _____/s/ Devin A. McRae_____

20

21                                         Attorneys for Kenny Rosen, Corie Henson, and
22                                         Michael O'Sullivan

23

24

25

26

27

28