GLENN D. POMERANTZ (State Bar No. 112503)
Glenn.Pomerantz@mto.com
JONATHAN E. ALTMAN (State Bar No. 170607)
Jonathan.Altman@mto.com
CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
Carolyn.Luedtke@mto.com
PETER E. GRATZINGER (State Bar No. 228764)
Peter.Gratzinger@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants
AMERICAN BROADCASTING COMPANIES, INC., THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., ABC, INC., dba DISNEY/ABC TELEVISION GROUP, KEEP CALM AND CARRY ON PRODUCTIONS, INC.

(*Additional counsel listed on signature page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CBS Broadcasting Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>American Broadcasting Companies, Inc., et. al.,<br><br>    Defendants. | CASE NO. CV 12-04073 GAF (JEMx)<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF JOINT STIPULATION AND DEFENDANTS' OPPOSITION TO CBS'S MOTION TO COMPEL ADDITIONAL DISCOVERY**<br><br>Hearing<br>Date:    none set<br>Time:    none set<br>Place:    Spring St., 8th Floor, Ctrm C<br>Judge:    Hon. John McDermott |

Earlier today, Judge Feess set forth a tentative ruling denying CBS's *ex parte* motion for a TRO, noting that CBS was not likely to succeed on the merits of the trade secret or copyright claims. The Court took the matter under submission after oral argument and indicated it would issue a final ruling soon. In the meantime, Defendants submit this Supplemental Memorandum in opposition to CBS's motion to compel documents responsive to Request Nos. 1-4. For the reasons set forth in the Defendants' Joint Stipulation and below, any further discovery should proceed under the normal discovery rules after a Rule 26(f) conference.

### A. No Basis for Further Expedited Copyright Discovery

CBS cannot justify expedited discovery for Request Nos. 1-4 on their copyright claim. *See* Joint Stipulation § III(B). As Defendants argued to the Court today, the extent of access is not relevant in light of the expressive differences between the two shows. As such, it is irrelevant to the copyright claim, for example, what documents Defendants may have regarding *Big Brother*. (Request No. 1).

### B. Expedited Trade Secret Discovery Must Await Adequate Section 2019.210 Disclosure

Therefore, the only plausible legal basis CBS could now assert for expedited Request Nos. 1-4 is their trade secret claim. However, after three attempts, CBS still has not satisfied its Section 2019.210 obligation to provide a reasonably particular trade secret statement, which is a threshold requirement for trade secret discovery.[1] Therefore, there should be no discovery until that requirement is met.

CBS's purported list of 14 trade secrets does not satisfy the reasonable particularity requirement for trade secret discovery to commence. *See* Luedtke Decl. Ex. 7.[2] To begin, alleged trade secret no. 14 -- "[t]he *Big Brother* production

---

[1] CBS cannot use conversion or unfair competition claims to dodge the requirement to state trade secrets with particularity. These claims are preempted. *See* Joint Stipulation at III(D).

[2] *See also* Decl. of Michael Seitz, Dkt. 100, Ex. C (hereinafter "Reply Appendix").

process, as a whole" -- is an impermissible "catch-all" that dooms the disclosure. If CBS claims its processes are the secret, it must define the specific processes.[3] CBS cannot claim to own its employees' experience in reality television production. To do so would foreclose *Big Brother* employees from changing jobs. As Judge Feess observed at today's TRO hearing, California courts must take care to ensure that trade secret claims are not used to establish de facto covenants not to compete.

Alleged trade secret no. 1 -- "[t]he *Big Brother* manuals" -- is also defective because it incorporates 300 plus pages of manuals without specifying *what* in those manuals is the trade secret. Courts specifically reject this type of disclosure.[4]

As Defendants have pointed out flaws in CBS's disclosure, CBS has become *more* vague and general with each supplemental effort at a disclosure. For example, CBS now claims as trade secret no. 9 "the processes and techniques for producing 'evergreens.'" An evergreen is simply a character piece, much like the Olympics do when they tell viewers about an athlete's background. Defendants have show that evergreen segments are (1) obvious to *Big Brother* viewers and (2) routinely used in reality television production. *See* Luedtke Decl. Ex. 4 (Rosen Decl. ¶ 45); Ex. 8 (Henson Decl. ¶ 16). CBS's only retort is "[t]hat the use of evergreens may be known does not suggest that *processes and techniques* by which *Big Brother* produces evergreens are not trade secrets." Reply Appendix at 8. What secret processes and techniques? CBS never defines them, and thus does not satisfy Section 2019.210.

---

[3] *Perlan Therapeutics, Inc. v. Superior Court,* 178 Cal. App. 4th 1333, 1350 (2009) ("[Plaintiff] is not entitled to include broad, 'catch-all' language as a tactic to preserve an unrestricted, unilateral right to subsequently amend its trade secret statement. If [Plaintiff] does not know what its own trade secrets are, it has no basis for suggesting defendants misappropriated them.").

[4] *Perlan* held that the plaintiff is not "entitled to hide its trade secrets in 'plain sight' by including surplusage and voluminous attachments in its trade secret statement." *Id.* at 1350, 1352 (finding that, among other problems, the trade secret statement was defective because it referenced "hundreds of pages of extra documents").

1    Supposed trade secret no. 6 is the use of quad split and 9-split video
2 monitors. (This is the use of a panel of multiple camera feeds on one screen, much
3 as one would see a security guard use.) This technology is commonplace in reality
4 television production. *See* Luedtke Decl. Ex. 4 (Rosen Decl. ¶ 40); Ex. 8 (Henson
5 Decl. ¶ 13). In fact, CBS's public behind-the-scenes tours of *Big Brother*, available
6 on YouTube, show the quad-split and 9-split monitors. *See id.* Ex. 4 (Rosen Decl.
7 ¶ 40); Ex. 8 (Henson Decl. ¶ 13); Ex. 5 (Bock Decl. ¶ 8). At today's hearing, Judge
8 Feess even remarked that this was similar to what he saw on a show describing how
9 the cameras and control room worked for the World Series. In response, CBS says
10 the secret is "the manner in which they are used on *Big Brother*, and the rationale
11 for organizing the screens in the manner in which they are organized are not known
12 in the industry." *See* Reply Appendix. Again, what rationale for organizing the
13 screens? What manner in which they are organized? CBS further fails to identify
14 the secret and the unique way this common equipment is used.
15    To pick one last example (though all 14 trade secrets suffer from similar
16 flaws), consider alleged trade secret no. 7, *Big Brother's* use of loggers. Again,
17 Defendants have shown that loggers are commonplace in reality television
18 production. *See, e.g.,* Luedtke Decl. Ex. 4 (Rosen Decl. ¶ 41); Ex. 8 (Henson Decl.
19 ¶ 14). Indeed, CBS gave journalists a tour of the *Big Brother* set and a journalist
20 described the role of loggers in an article. *See* Dkt. 55-1 (Rosen Decl. Ex. A). CBS
21 concedes that loggers are used generally in reality television, but says its "secret" is
22 the "processes and techniques for 'logging' and the role of loggers." *See* Reply
23 Appendix. Yet again, CBS has failed to articulate the specific processes and
24 techniques that are not part of the common knowledge in the trade or described in
25 detail in the article. Without doing more than simply asserting that there is
26 additional, secret information, Section 2019.210 is not satisfied. *See, e.g.*, *Gabriel*
27 *Technologies Corp. v. Qualcomm, Inc.*, No. 08-cv-1992, 2011 WL 6152240, at *5-
28 *6 (S.D. Cal. Dec. 12, 2011).

### C. CBS's Expedited Discovery Is Overbroad and Unduly Burdensome

As explained in the Joint Stipulation at Section III(E), and in the declarations of Timothy Bock and Jason Ray, the scope and timing of discovery demanded by CBS would be highly burdensome and expensive, if not outright impossible.[5] *See* Dkts. 67 & 68 ("Ray Decl." & "Bock Decl."). Expedited collection of documents responsive to the broad Request Nos. 1-4 would take between 14 and 28 calendar days and cost hundreds of thousands, if not millions, of dollars. *See* Ray Decl. ¶¶ 16, 19. The burden is heightened by the fact that documents are not in a centralized location, and in fact, are interspersed with information and data from other shows as well as personal information. *See* Bock Decl. ¶ 3; Ray Decl. ¶¶ 13-15. This will cause the collection to be more difficult.

Importantly, the requests are overbroad. It is <u>not</u> the case that Request Nos. 1-4 only seek documents connected to *Big Brother*. To the contrary, Request Nos. 2 and 3 relate to the format, content, production, and design of *The Glass House*, regardless of whether that has anything to do with *Big Brother*. If two story editors from *The Glass House* who never worked on *Big Brother* exchange emails about whether to include a fight between Joy and Alex in next Monday's episode of *The Glass House*, then that is a document relating to the content of *The Glass House* and responsive to Request No. 2. If two camera operators exchange emails about whether to adjust the placement of the camera in the living room, again, that would be responsive to Request No. 3. None of these documents would have any connection whatsoever to *Big Brother* or the wrongdoing that is alleged. It is easy to see how a request that encompasses such day-to-day communications would be

---

[5] In considering "good cause," this Court should consider "the breadth of the discovery requests" and "the burden on the defendants to comply with the requests." *American Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009).

1  overbroad, and difficult to see how it could conceivably be discoverable,
2  particularly on an onerous expedited schedule.

3     CBS appears to be wielding this litigation, and this overbroad discovery, as a
4  weapon in an effort to thwart ABC from launching a successful competing show,
5  and to prevent its former employees from taking the job of their choice.  As Judge
6  Feess observed today, the Courts must be careful not to allow intellectual property
7  rights holders to use those rights anticompetitively.  Here, where Keep Calm
8  employees are immersed in the intense production schedule of a new show, it
9  would impose a significant burden on them to engage in the wide-ranging and
10  unjustifiably distracting expedited discovery suggested by CBS.  *See* Bock Decl. ¶
11  6.  CBS's efforts to stymie competition through litigation must be stopped.

12     In sum, Request Nos. 1-4 are overbroad and would be unduly burdensome to
13  respond to at any time, much less as part of expedited discovery.  Moreover, the 48-
14  hour turnaround proposed by CBS is quite simply impossible. *See generally* Bock
15  Decl; Ray Decl.

16     **D.    CBS's Privilege Instruction Issue Is Procedurally Improper**

17     *Fourth,* and finally, CBS should not be allowed to sneak a new discovery
18  dispute into their Joint Stipulation relating to privilege instructions.  This is
19  procedurally improper because this expedited Joint Stipulation process was
20  expressly limited to "the remaining discovery disputes regarding documents that
21  have not been produced." June 1, 2012 Order, Dkt. 28 at 1.  There is no procedural
22  basis for CBS to engage in an expedited Joint Stipulation process for this *new*
23  dispute unrelated to those document disputes.  Moreover, the motion is premature
24  and in violation of the Local Rules because it was made without a meet and confer.
25  This Court should deny the motion to compel on the privilege issue, or at a
26  minimum, should allow Defendants an opportunity to brief it after a good faith
27  meet and confer to see whether the parties can resolve the dispute.

28

17732709.1

- 5 -

DEFENDANTS' SUPPLEMENTAL
MEMORANDUM RE: DISCOVERY
CV 12-0407

| | | |
|---|---|---|
| 1 | DATED: June 16, 2012 | Munger, Tolles & Olson LLP |
| 2 | | GLENN D. POMERANTZ |
| 3 | | JONATHAN E. ALTMAN |
| | | CAROLYN HOECKER LUEDTKE |
| 4 | | PETER E. GRATZINGER |
| 5 | | |
| 6 | | By: */s/ Carolyn Hoecker Luedtke* |
| 7 | | CAROLYN HOECKER LUEDTKE |
| | | Attorneys for Defendants |
| 8 | | |
| 9 | | American Broadcasting Companies, Inc., The Walt Disney Company, Disney Enterprises, Inc., ABC, Inc., dba Disney/ABC Television Group and Keep Calm and Carry On Productions, Inc. |
| 10 | | |
| 11 | | |
| 12 | DATED: June 16, 2012 | Early Sullivan Wright, Et Al. |
| 13 | | |
| 14 | | DEVIN A. MCRAE |
| | | CHRISTOPHER I. RITTER |
| 15 | | |
| 16 | | By: */s/ Devin A. McRae* |
| 17 | | DEVIN A. MCRAE |
| | | Attorneys For Defendants |
| 18 | | |
| 19 | | Kenny Rosen, Corie Henson, and Michael O'Sullivan |